# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## MARY MERCER DUNLOP AND OTHERS v. DAVID DUNLOP'S EXECUTORS AND OTHERS.

March 18, 1926.

Absent, West, J.

1. WILLS—*Restraint on Alienation—Devise by Father of His Business to His Son—Provision for Reverter in Case of Alienation by the Son—Case at Bar.*—A father gave his son an absolute fee simple estate in all the property, both real estate and tangible personal property, which might be in his tobacco business at the time of his death. The testator then proceeded to invest his son with the intangible property accompanying the conduct of a large business of that character and the good will of the business. The will then contained a clause that in case of a sale of the business as an entirety by the son, three-fourths of the net amount accruing from the estimated value of the good will, brands, trade-marks, etc., should become a part of the testator's estate.

   *Held:* That, notwithstanding the provision in the will against alienation of the business by the son, the son was invested with full and complete ownership of the property given him, both tangible and intangible.

2. WILLS—*Restraint on Alienation—Gift of Absolute Estate—Case at Bar.*—A testator by his will gave absolutely to his son his tobacco business, including both the tangible and intangible property belonging to such business. He than provided that in case of a sale by the son in entirety of the business, the son should receive only one-fourth of the estimated value of the good will, brands, trade-marks, etc., of the business.

   *Held:* That the latter provision was in fact a condition having the effect of a restraint upon the absolute fee simple ownership of the property, real and personal, with which the legatee and devisee was invested, and, therefore, is repugnant to the fee simple gift and hence void as a restraint upon the alienation of property given to one in fee simple.

3. WILLS—*Conditional Limitation—Gift of a Tobacco Business with a Provision that Upon Sale of the Business by the Legatee and Devisee, a Part of the Proceeds of the Sale Should Revert to Testator's Estate—Case at Bar.*—In the instant case the testator gave his son his tobacco

business absolutely, with a proviso that in event of the sale of the business as an entirety three-fourths of the net amount accruing from the estimated value of the good will, brand, trade-marks, etc., should become a part of his estate. It was argued that what was affected by this proviso was not a condition repugnant to the preceding gift, but was a limitation upon the gift. The sale or alienation was not absolutely forbidden, therefore, there was no limitation upon the estate itself, because there was no gift over to a third person and title and right to transfer the ownership existed in the donee.

*Held:* That it was the intention of the testator to put a restraint upon the right of alienation; this he had no power to accomplish.

4. ESTATES—*Fee Simple—Incidents—Incompatible Conditions—Restraint on Alienation.*—It is well settled in this country and in England, from which country we derived the principles of our jurisprudence, that a gift or grant of a beneficial estate, in fee or absolutely, whether legal or equitable, has certain legal incidents of which the estate cannot be divested, and all conditions adopted for that purpose are necessarily repugnant and void. Among those incidents are the donee's or grantee's power of alienating such estate, and its liability for his debts. This applies to personalty equally with real estate.

5. TRUSTS AND TRUSTEES—*Spendthrift Trusts—Section 5157 of the Code of 1919.*—It would seem that spendthrift trusts can now be erected in Virginia under section 5157 of the Code of 1919.

6. WILLS—*Restraint on Alienation—Partial Restraint.*—A legatee and devisee would be greatly restrained in his right of alienation if in the event he undertook to make a sale of the property he would forfeit a large amount of the purchase money. While this is not a complete denial of the right of alienation, it is clearly a restraint upon that right, which does not come within any of the exceptions to the rule, and is illegal and constitutes a condition repugnant to the absolute estate previously given the legatee and devisee and is void.

7. ESTATES—*Fee Simple—Right of Alienation.*—The right of alienation is an inherent and inseparable quality of an estate in fee simple. An unreasonable restraint laid upon such an estate embodies a condition repugnant to that estate and is therefore void.

Appeal from a decree of the Law and Equity Court of the city of Richmond. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Buford & Ramey* and *Cullen & Dykeman*, for the appellants.

*A. W. Patterson, Leake & Buford, McGuire, Riely & Eggleston*, and *R. B. Wilcox*, for the appellees.

CAMPBELL, J., delivered the opinion of the court.

The appellants, Mary Mercer Dunlop, Sallie Harrison Eddy, formerly Dunlop, Agnes Margaret Gray, formerly Dunlop, and Charlotte LeMoine Welsh, formerly Dunlop, instituted their suit in the Law and Equity Court of the city of Richmond against Mary Corling McCrea, formerly Dunlop, in her own right and as executrix of the will of David Dunlop, deceased, David Dunlop Corporation, British-American Tobacco Company, Limited, John Dunlop, in his own right, and the said John Dunlop and Old Dominion Trust Company, executors, and others, to recover from the estate of David Dunlop, II, the David Dunlop Corporation and the British-American Tobacco Company, Limited, "three-fourths of the value of the good will, trade marks, brands, etc.," devised to David Dunlop, II, and alleged to have been sold by him in violation of the provisions of the will of David Dunlop, I, and to compel the payment of the sum so recovered to the executors of the estate of David Dunlop, I, to be by them distributed to the appellants, pursuant to the provisions of the will.

The appellants are the children of David Dunlop, I, and his second wife, Mary Corling Dunlop, now Mary Corling McCrea. David Dunlop, I, was a resident of the city of Petersburg, Virginia, and known internationally as a dealer in and manufacturer of high grade tobacco.

On the 2nd day of March, 1901, David Dunlop, I, made and published his last will and testament, and on the 3rd day of November, 1902, departed this life. Immediately thereafter, as provided in the will, David Dunlop, II, took possession of the vast estate devised and bequeathed to him.

On the 23rd day of July, 1903, the "David Dunlop Corporation" was organized under a charter of incorporation granted by the State of New Jersey, for the purpose of engaging in the tobacco business in various forms. On the first day of August, 1903, David Dunlop, II, entered into a contract in writing with the corporation, whereby he leased to the corporation for a term of thirty years (with the privilege of renewal on certain conditions) the real estate in the city of Petersburg devised by his father, together with the good will, trade-marks and brands, used in the business of manufacturing tobacco. The bill of complaint contains the allegations that this purported lease was in fact a sale in entirety of the tobacco business of David Dunlop, II, and that the David Dunlop Corporation is a subsidiary corporation of the British-American Tobacco Company, Limited; and that this alleged sale is in contravention of the fourth clause of the will of David Dunlop, I.

To the original and amended bills of complaint all of the respondents except Mary Corling McCrea, mother of appellants, interposed their several demurrers. After mature consideration the chancellor sustained the fourth ground of demurrer, which reads as follows:

"Fourth: That clause in the will of David Dunlop, I, which undertook to provide that in event of a sale of the business in question, as an entirety, three-fourths of the net amount accruing from the

estimated value of the good will, brands, trade-marks, etc., in said sale, should become a part of his estate, is void and of no effect as an unreasonable and illegal restraint upon the alienation of an absolute estate previously given by the same instrument."

Though the grounds of demurrer were argued at length, both orally and upon briefs, and months given to a consideration of the matter, the chancellor granted a rehearing of the cause, and, after extended argument, in addition to a reconsideration of the arguments made in the first instance, considered the friendly criticisms of counsel as to alleged errors contained in the written opinion of the court. After holding the cause under advisement until July 28, 1925, the chancellor again came to the conclusion that the fourth ground of demurrer should be sustained, and accordingly entered a decree dismissing the bill of complaint, with costs adjudged against the appellants.

The opinion of the learned judge, Honorable Beverley T. Crump (now President of the Special Court of Appeals), so clearly sets forth the reasons for the affirmance of the decree complained of, that we hereby adopt the same as the conclusion of this court. It follows:

"David Dunlop, of the city of Petersburg, who died in the year 1901, was for many years a tobacco manufacturer who conducted the business of manufacturing tobacco in that city on a very large scale. His will was made and executed March 2, 1901, and probated November 3, 1902.

"By the first clause he bequeathed to his son, David Dunlop, Jr., the capital employed in his tobacco business, estimated at $300,000, in the following language:

" 'I give and bequeath to my son, David Dunlop, Jr., ($300,000) three hundred thousand dollars, to be

paid out of the money capital (embracing leaf tobacco, manufactured tobacco, lumber and all other materials used in my business of manufacturing tobacco, stems, scraps, etc., and cash on hand in banks), now used and the same used (if any) at the time of my death in my business of manufacturing tobacco on Old street, in the city of Petersburg. If there should not be $300,000 capital employed in said business at the time of my death, then the balance is to be made up from other monies and securities; if over $300,000, then the surplus to go to my other bequest, hereinafter made.'

"The manifest object of the foregoing clause was to invest his son with the complete title and absolute ownership of the capital employed in the business, which he estimated at $300,000; but in any event he evidently thought that the amount of $300,000 was necessary as capital in order to carry on the business properly.  The result of the foregoing clause was to give directly to his son all of the tangible personal property and of the money in bank that should be owned by the business at the time of his death.  Having done this, he proceeded to devise to this same son all of the real estate, buildings and machinery used in connection with his business, and in doing so uses the following comprehensive language:

" 'Next, I give and bequeath to my son, David Dunlop, Jr., all the real estate owned by me, and used for redrying leaf tobacco and manufacturing leaf tobacco, and the lot on West Hill, in Petersburg, Virginia, used for piling lumber, used in said manufacturing tobacco business, and my one-third of the factory in Lynchburg, Va., operated by my brother, Robert Dunlop, as a redrying leaf tobacco factory, comprising on my books the main factory building, standing on said books, February 1, 1901, at $56,530.22,

the stemmery on Old street, standing at $28,104.74; Stemmery No. 2, on Old street, standing at $8,082.85, the Wythe street lot and stemmery building, standing at $4,842.67, and the lots on West Hill, standing at $720.74, and the brick and stone carpenter shop included in cost of main factory building, and my one-third of the Lynchburg factory building, standing at $5,006.25, making a total of real estate, used in my business, of the amount of $103,287.47. Also, I give and bequeath to my son, David Dunlop, Jr., all the factory fixtures, and machinery of all kinds, including boilers, engines, pumps, etc., used in my business of manufacturing tobacco, standing on my books at $42,093.14.'

[1] "There can be no question but that the foregoing second clause in the will devises to the son directly all of the real estate mentioned in absolute fee simple, vesting in him complete ownership.

"Having thus given the son an absolute fee simple estate in all of the property, both real estate and tangible personal property which might be in the business at the time of his death, the testator then proceeds to invest him with the intangible property accompanying the conduct of a large business of that character. This he accomplishes in the following language:

" 'I direct that at my death an inventory be taken of all stock on hand in my manufacturing business, both of raw material and manufactured tobacco, stems, scraps, lumber, etc., etc., unsold and unaccounted for, so that the business may be immediately turned over to my son, David Dunlop, Jr., and be continued by him. And I direct that all my trade-marks, brands, good will, etc., should go to my son along with and as part of the business, and that no hindrance be made

to the immediate continuation of my business by him and for his sole benefit; but I further direct that in the event of his selling the business as an entirety, including good will, trade-marks, brands, etc., he shall receive only one-fourth of the net amount accruing from the estimated value of such good will, brands, etc., in said sale, and the other three-fourths to be paid to my estate, to be and become a part of said estate.'

"According to these provisions of the will, David Dunlop, soon after the father's death, entered upon the full possession of the tobacco business and all of its property and its incidents and continued the business.

"In the year 1903 he transferred apparently the entire business, together with all of the real estate and personal property connected with it, to a corporation then formed under the corporate name of David Dunlop, Inc. This transfer was consummated by an instrument which is in the form of a lease.

"The plaintiffs in this cause have filed their bill, in which it is claimed that by so transferring the business and all its property, David Dunlop, Jr., violated the above clause by which the testator directed that in the event he should sell the business as an entirety, including good will, trade-marks, brands, etc., then he should receive only one-fourth of the net amount accruing from the estimated value of such good will, brands, etc., in said sale, the other three-fourths to be paid to his estate and to be and become a part of the estate. To this bill the defendants have filed a demurrer assigning several grounds therefor.

"It is contended on the part of the plaintiffs that it was not the intention of the testator to invest the devisee and legatee named with full and complete ownership of the property given him, in any event at least of the intangible personal property; that it was

the intention of the testator to allow the son to enter upon possession of the entire business and to continue it only for his use, *i. e.*, for his own benefit; and that if he abandoned continuing the business personally and for his benefit and undertook to sell it, then he was to receive only the one-fourth of the purchase money in such sale, accruing as above stated. In other words, it is contended on the part of the plaintiffs that David Dunlop, Jr., only acquired a beneficial interest in the business property and the business itself, restricted to its being continued by him and for his benefit.

"I do not so interpret the will. Upon a careful consideration of it and an examination of its language, it seems to me difficult to conceive of a will more appropriate to evince the intention of a testator owning a very large and extensive business to put his son in absolute control and complete ownership of it. I can find no indication of any trust in the language of the will. The words, 'so that the business may be immediately turned over to my son, David Dunlop, Jr., and be continued by him,' are rather an indication of the desire on the part of the testator that the son forthwith, after his death, carry on the business as its complete owner without interruption, just as it had been conducted by the testator himself. There is certainly a direct and unqualified absolute gift of the intangible personal property intended by the testator when he says: 'I direct that all my trade-marks, brands, good will, etc., should go to my son along with and as part of the business and that no hindrance be made to the immediate continuation of my business by him and for his sole benefit.' The addition of the words 'and for his sole benefit' can scarcely be said to be intended to limit in any way the complete gift just made. On the contrary, its natural significance is to

emphasize the completeness of the gift. My conclusion is that the entire business as it existed at the time of the testator's death was intended by him to be devised and bequeathed to his son in fee simple and in absolute ownership, so that there might be no interference from any source with the right of the son to conduct and carry on the business in all respects as its complete owner. It is to be noted that after the extract from the will already made, the testator proceeds to dispose of the balance of his estate and commences that clause as follows: 'After my son, David Dunlop, Jr., shall have received his portion of my estate as willed above, I bequeath and give all the rest and remainder of my property, both real and personal, etc.' This also indicates further the intention on the part of the testator to make an absolute devise and gift to his son and further shows that it was his belief that he had done so. It is to be noted as showing the confidence reposed in the son by the testator that the son was named as one of his executors and also as trustee for a special trust created by the will for the widow of the testator.

[2, 3] "Among the grounds assigned for the demurrer to the bill, the defendants claim that the language directing that in the event of a sale of the business by David Dunlop, Jr., then he should receive only one-fourth of the net amount as stated by the testator, is in fact a condition having the effect of a restraint upon the absolute fee simple ownership of the property, real and personal, with which the legatee was invested and therefore is repugnant to the fee simple gift and hence void as a restraint upon the alienation of property given to one in fee simple.

"I think this contention is sound. The testator here had an only son, in whom, so far as appears from the face of this bill, he had complete confidence and he had given him this exceedingly valuable tobacco business, with all of the property, real and personal, essential to its conduct. Doubtless he desired to perpetuate his name with that business as it had been built up by his own exertions, and his name in connection with the trade-marks and brands had become known not only in local tobacco markets, but probably in the markets of the world. I think it is manifest that with this idea in view, he intended to compel his son to continue the business as the Dunlop business and in order to effect that he put this restraint upon it. It is unquestionably a restraint upon alienation. It is insisted by the plaintiffs that what was effected by this clause was not a condition repugnant to the preceding gift, but was a limitation upon the gift; in other words, that the testator intended that his son should conduct the business for his sole benefit only until he might sell it and therefore the gift to him was for that period and amounted only to a conditional limitation.

"I do not think that the language of the will can be so interpreted as to bring about such a result. The sale or alienation is not absolutely forbidden. On the contrary, under the terms used, the purchaser would get a good title with the possible exception that he would be required to look to the application of the purchase money. There is, therefore, no limitation upon the estate itself, because there is no gift over to a third person, and title and right to transfer the ownership exists in the donee. Much speculation might be engaged in, but I am satisfied that it is impossible to gather from the will anything else than that it was the

intention of the testator to put a restraint upon the right of alienation. This, clearly, he had no power to accomplish.

[4] "It is unnecessary to go into at length the well known doctrine that neither a testator in a will nor a grantor in a deed can give a fee simple estate in either real or personal property and endeavor to impose upon the donee any condition incompatible with the usual and necessary incidents accompanying a fee simple estate. Among such incidents are the complete right of alienation, without let or hindrance and the liability of the property for the debts of the donee.

"This doctrine has been recognized in Virginia in the case of *Hutchinson* v. *Maxwell*, 100 Va. 175, 40 S. E. 657, 57 L. R. A. 384, 93 Am. St. Rep. 944, where the court says: 'It is well settled in this country and in England, from which country we derived the principles of our jurisprudence, that a gift or grant of a beneficial estate, in fee or absolutely, whether legal or equitable, has certain legal incidents of which the estate cannot be divested, and all conditions adopted for that purpose are necessarily repugnant and void. Among those incidents are the donee's or grantee's power of alienating such estate, and its liability for his debts. Coke Upon Litt. 223a; *Brandon* v. *Robinson*, 18 Vesey 429; 2 Minor's Inst. (4th ed.), 287-8; Gray's Restraints on Alienation (2d ed.), secs. 105 and 134.

" 'The reason for this doctrine or principle is the repugnancy of such restraints upon the ordinary rights of property, and that property would thereby be withdrawn from the ordinary rules and channels of commerce and trade.'

"This doctrine applies to personalty equally with real estate. Gray's Restraints on Alienation (2d ed.), sec. 27.

"The above case of *Hutchinson* v. *Maxwell* was approved in *Petty* v. *Moores*, &c., 110 Va. 815, 67 S. E. 355, 27 L. R. A. (N. S.) 800, 19 Am. Cas. 271. Of course this general principle is familiar law and I will only refer further to *Christmas* v. *Winston*, 152 N. C. 48, 67 S. E. 58, also reported in 27 L. R. A. (N. S.) 1084; 1 Minor Real Property, sec. 576, *et seq.*; Gray's Restraints on Alienation, secs. 23, 24, 29a and p. 233; and sec. 3, Tiffany on Real Property (2d. ed.) 592; also *Ottman* v. *Allter*, 208 N. Y. S. 454, 212 App. Div. 80; *Pattin* v. *Scott*, 270 Pa. St. 49, 112A 911; *Crofts* v. *Bramish*, 2 I. R. 349, reported also in 1 British Ruling Cases, p. 813.

[5] "It is to be noted that in *Hutchinson* v. *Maxwell*, *supra*, our court rejected the doctrine of spendthrift trusts in Virginia. However, it would seem that such trusts can now be erected under section 5157 of the Code of 1919.

[6] "It is manifest that David Dunlop, Jr., would be greatly restrained in his right of alienation if, in the event he undertook to make a sale of the property he would forfeit a large amount of the purchase money. While this is not a complete denial of the right of alienation, it is clearly a restraint upon that right, which does not come within any of the exceptions named by Mr. Minor in his book on real property referred to above, or in the other authorities. It is a restraint through the requirement of the forfeiture of a part of the purchase money in case of a sale. This is illegal and constitutes a condition repugnant to the absolute estate just given, and, therefore, the condition embracing that restraint is void. In argument, I have been referred to two cases very similar to the case at bar, from which quotations at length have been made by counsel. Without quoting from them, they

are manifestly applicable to this case. I refer to *De-Peyster* v. *Michael*, 6 N. Y. 467, 57 Am. Dec. 470, and *In re Elliott*, 2 Ch. 353 (1895E, 493). In both of those cases, the restraint consisted, as it does here, of requiring a forfeiture of a portion of the purchase money in the event the donee should undertake to sell the property already given him in fee simple; and the condition in both of those cases was held invalid.

"The general doctrine is well considered in *Potter* v. *Couch*, 141 U. S. 296, 11 S. Ct. 1005, 35 L. Ed. 721.

[7] "The right of alienation is an inherent and inseparable quality of an estate in fee simple. An unreasonable restraint laid upon such an estate embodies a condition repugnant to that estate and is therefore void.

"In my opinion, the language of the will in this case, in which the testator undertakes, after vesting his son with a fee simple estate in the property, to direct that in the event he should sell the business, etc., then he should receive only one-fourth of that portion of the purchase money, as stated in the will, was intended to constitute and does constitute a restraint upon the inherent right of alienation, and, therefore, is repugnant to the preceding absolute gift and is void.

"For this reason, I am of opinion to sustain the demurrer to the bill."

*Affirmed.*