## 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫

W. W. Sanford and Others v. A. E. Sims and Others.

September 5, 1951.

Record No. 3801.

Present, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Nottingham & Somerville* and *H. C. DeJarnette,* for the appellants.

*Shackelford & Robertson,* for the appellees.

Buchanan, J., delivered the opinion of the court.

This case involves the question of ownership of a lot of land in the town of Orange as between the successors of the grantee in a deed and the devisees of the grantor under a reverter clause in the same deed. The appellants are the devisees of Joseph H. Johnson, who died in 1893. The appellees are successors in title of his grantee.

The facts are not in dispute. The property involved was formerly owned by Joseph H. Johnson and is part of a somewhat larger lot conveyed by him by deed of August 14, 1878, to Potomac, Fredericksburg & Piedmont Railroad Company and its successors, "To Have and To Hold, the said lot or parcel of land hereby conveyed unto the said party of the second part and its successors forever." Following the *habendum* clause was this provision:

"And the said party of the second part and its successors covenant and agree to and with the said party of the first part that the said parcel of land hereby conveyed shall be used solely and exclusively for the use and benefit of the said party of the second part and its successors for the purpose of running its locomotives, trains or cars, for shops, sidings and depots, and should the said party of the second part and its successors cease or fail to enjoy the said lot or parcel of land for the purpose herein set forth, then the said lot of land shall revert to and become the property of the party of the first part or his heirs or assigns."

By deed of June 12, 1925, the P. F. & P. Railroad Company conveyed all its property and equipment to Orange and Fredericksburg Railway Company, the name of which was later changed to Virginia Central Railway Company.

In 1926 the Virginia Central broad-gauged its railroad line acquired from the P. F. & P. Railroad Company and extended it to a new depot which it had erected on Church street in the town of Orange. In doing so it ran a small segment of its line over the western corner or edge of the Johnson lot, but not on any part of the lot now in controversy.

Prior to the conveyance of June, 1925, P. F. & P. Railroad Company erected a building on that part of the Johnson lot now in controversy, which was used as a depot by it and its successor, Virginia Central, until 1926. In that year Virginia Central

began using the new depot, to which its tracks had been extended, and abandoned the old depot. In the meantime it had built a filling station next to the old depot, on the lot in controversy, which was operated for a short time by an employee of the company. In September, 1926, Virginia Central leased this filling station and the old depot building to one R. V. Roberts for use as a filling station and garage.. At no time since that date has the property now in controversy been used for any purpose other than a filling station, garage and automobile paint and body shop.

On August 19, 1927, Virginia Central, by lease contract in writing but not recorded, leased to Orange Oil & Gas Company, Inc., all the original Johnson lot except that part which had been taken by Virginia Central for broad-gauging its tracks. After describing the property the lease continued, "together with the depot building thereon located, the filling station with its tanks and equipment thereon located, the large tank now erected thereon, and the right to place thereon five (5) additional tanks, for the uses and purposes of the said Lessee in the conduct of its business; so much of the said parcel of land as is not necessary for the use of the said Lessee, in connection with its business, the said Lessor shall have the right to use as a part of its yard in the conduct of the Lessor's business; * * *."

R. V. Roberts continued to operate this leased property, under the lessee, from 1927 to October 1, 1938, as a filling station, automobile repair shop and parking area. It was not used during this period for railroad purposes of any kind.

By deed of August 17, 1938, Virginia Central conveyed to C. & O. Railway Company certain property which included the strip off of the original Johnson lot used by Virginia Central for its roadbed, and also included the western part of the lot leased to Orange Oil & Gas Company, Inc., but did not include any part of the lot now in controversy.

By deed dated October 1, 1938, Virginia Central conveyed to the appellees the lot in controversy, being the eastern part of the lot conveyed by Johnson to P. F. & P. Railroad Company by the deed containing the reverter clause above quoted.

In June, 1949, the appellees brought this suit in equity against the devisees of Johnson to remove any claim under the reverter clause as a cloud on their title, on the ground that any right of re-entry was barred by the statute of limitations and the

adverse possession of the appellees and their predecessors. Certain of the devisees of Johnson filed answers and cross-bills denying that there had been any breach of the condition in the Johnson deed until the conveyance to appellees in 1938, and claiming title under the reverter clause to the lot conveyed to the appellees by that deed.

By the decree appealed from the court below held that the quoted provision of the Johnson deed constituted a condition subsequent which was breached in 1926 when the property ceased to be used for railroad purposes; that the right of re-entry was barred by the statute of limitations and that the title of the appellees should be established and quieted.

Appellants concede that the quoted provision of the Johnson deed constituted a condition subsequent. However, they contend that there was no breach of this condition in 1926; that the breach did not occur until 1938; but that whether it occurred in 1926 or 1938, their right of re-entry is not barred, because until 1938 possession by appellees' predecessors was not adverse, but in privity with them because held under the same deed.

Appellees contend that the Johnson deed passed a fee simple estate subject to a possibility of reverter for breach of the condition subsequent, requiring affirmative action of re-entry or its equivalent to revest the title in Johnson's devisees.

Technically, perhaps, there is a distinction between a possibility of reverter and a right of re-entry for breach of a condition subsequent; but the distinction is usually not observed and possibility of reverter and right of re-entry for condition broken are treated as the same. 33 Am. Jur., Life Estates, Remainders, Etc., §§ 205, 208, pp. 683, 688; Anno., 16 A. L. R. (2d) 1246.

In *Copenhaver* v. *Pendleton,* 155 Va. 463, 479, 155 S. E. 802, 806, 77 A. L. R. 324, 331, it was held:

"A possibility of reverter, as hereinbefore defined, is not an estate, present or future, but a possibility of having an estate. * * * In the case of a fee limited upon a condition subsequent it is a contingent right of re-entry upon condition broken."

It is a right inheritable at common law and in Virginia it may be transmitted also by deed or will. Code, 1950, § 55-6. *Copenhaver* v. *Pendleton, supra,* 155 Va. at p. 496, 155 S. E. at p. 812, 77 A. L. R. at p. 340; *County School Board* v. *Dowell,* 190 Va. 676, 689, 58 S. E. (2d) 38, 44.

■ Where there is a breach of a condition subsequent upon which the possibility of reverter depends, the estate vested in the grantee does not cease in him and revest *ipso facto* in the grantor or his successors, but remains unimpaired in the grantee or his successors until entry, or its equivalent, by the grantor or his successors; for the right to enforce the forfeiture may be waived, and the law, favoring the vested estate, will not permit its destruction until the right to forfeit has been exercised. *Copenhaver* v. *Pendleton, supra,* 155 Va. at p. 479, 155 S. E. at p. 806; *Pence* v. *Tidewater Townsite Corp.,* 127 Va. 447, 454, 103 S. E. 694, 697; *Neal* v. *State-Planters Bank, etc., Co.,* 166 Va. 158, 165, 184 S. E. 203, 205; Graves, Notes on Real Property, § 277, p. 394; 5 Michie's Jur., Deeds, § 105, p. 782; 19 Am. Jur., Estates, § 87, p. 548.

■ The mode at common law of exercising the right to enforce the forfeiture was by an entry on the land, unless the grantor was already in possession. "This right is purely a creature of law, and the remedy for the enforcement of the right is purely a legal remedy, which in modern practice, provided for in Virginia by statute, is an action of ejectment." *Pence* v. *Tidewater Townsite Corp., supra,* 127 Va. at p. 453, 103 S. E. at p. 696. Code, 1950, § 55-239.

■ While appellants' remedy for enforcing the forfeiture is purely legal, equity has in this case, without objection, taken cognizance of their cross-bills to enforce the right, under its power to retain a jurisdiction once acquired and enforce legal rights in order to administer complete relief. 7 Michie's Jur., Equity, § 6, p. 11. But on the question of enforcing such right, equity will respect the applicable statute of limitation. It is a well-established principle uniformly acted upon by courts of equity, that in respect to the statute of limitations equity follows the law; and if a legal demand be asserted in equity which at law is barred by statute, it is equally barred in equity. *Cole* v. *Ballard,* 78 Va. 139, 149; *Camp Mfg. Co.* v. *Green,* 129 Va. 360, 367, 106 S. E. 394, 397; *Cochran* v. *Hiden,* 130 Va. 123, 138, 107 S. E. 708, 713; *Hagan Estates* v. *New York Min., etc., Co.,* 184 Va. 1064, 1072-3, 37 S. E. (2d) 75, 79.

Section 8-5, Code, 1950 (Code 1919, § 5805), provides:

"No person shall make an entry on, or bring an action to recover, any land lying east of the Alleghany mountains, but within fifteen years, * * * next after the time at which the right to

make such entry or bring such action shall have first accrued to himself or to some person through whom he claims.''

The appellees' right to enforce their claim of forfeiture depends, therefore, upon when the asserted right first accrued. We think the trial court properly found that it accrued in 1926.

The provision of the Johnson deed was that the property should be used ''solely and exclusively'' by the grantee and its successors for the purpose of ''running its locomotives, trains or cars, for shops, sidings and depots,'' and if they should ''cease or fail to use and enjoy'' the premises for those purposes, the property should revert. In 1926 Virginia Central, as stated, built a filling station on the property next to the old depot, and it then abandoned the old depot and moved to a new one at a different place. At no time thereafter has the lot claimed by these appellants been used for any other than filling station and garage purposes. In the following year, 1927, as further evidence of having diverted the property to other than railroad purposes, Virginia Central leased the whole Johnson lot, down to the strip taken for right of way, to the Orange Oil & Gas Company, Inc., except so much as ''not necessary for the use of the said Lessee, in connection with its business.'' From that time to October, 1938, the property leased to the Oil and Gas Company was used solely as a filling station, automobile repair shop and parking area, and it was not used during that period for railroad purposes of any kind.

The only part of the Johnson lot ever used by Virginia Central for railroad purposes after 1926 was the small strip on the west side for its widened tracks. It then abandoned its old depot and committed all the rest of the property to uses other than those specified in its deed. Clearly the condition subsequent in its deed was then broken and the grantor's devisees had a right of entry. *Talbot* v. *Norfolk,* 152 Va. 851, 862, 148 S. E. 865, 868. The fact that twelve years later, in 1938, Virginia Central conveyed to C. & O. Railway Company a portion of the original Johnson lot leased to the Oil and Gas Company on its west side, but which was no part of the lot it conveyed six weeks later to these appellees, did not change or move forward the accrual date of the appellants' right of re-entry upon the lot so conveyed to these appellees, or stop the running of the statute which began in 1926.

Appellants argue, as stated, that these happenings in 1926

were not a breach of the condition and that there was not a complete severance of uses of the Johnson lot until the conveyances to the appellees and the C. & O. Railway Company in 1938. *Gleghorn* v. *Smith,* 26 Tex. Civ. App. 187, 62 S. W. 1096, and *Lawson* v. *Georgia, etc., Ry. Co.,* 142 Ga. 14, 82 S. E. 233, relied on by them, are distinguishable on their facts. There was no reverter clause in either, and in both the uses relied on for forfeiture were incidental to the main uses which continued to be as defined by the deeds. Here the 1938 conveyances did not mark the beginning of the prohibited uses of the property. Rather they confirmed and emphasized the uses to which the two parts of the lots had been devoted in 1926.

In *Virginian Ry. Co.* v. *Avis,* 124 Va. 711, 98 S. E. 638, Avis conveyed to the company two small parcels of land on opposite sides of the railroad tracks "to be used for depot purposes and facilities connected therewith." The company built a depot on one of the tracks but leased the other to a lessee who erected a warehouse and other structures for his personal benefit. At the suit of Avis the company and its lessee were enjoined from making that use of the lot, this court holding that to say that the quoted language "means that the company will only use such part as it needs for a depot and incidental facilities and may lease the residue to outsiders for business purposes wholly apart from its passenger and freight operations, is to say something which the parties did not say." 124 Va. at p. 717, 98 S. E. at p. 640. See also, *Moss* v. *Chappell,* 126 Ga. 196, 54 S. E. 968.

If the use of the small strip of the Johnson lot for track-widening purposes in 1926, when the rest of the lot was committed to other than railroad use, prevented the latter use from being a breach of the condition subsequent, then there has not yet been a breach of that condition, and no right of re-entry has yet accrued to these appellants, because the Virginia Central continued to use that strip until its conveyance in 1938 to the C. & O. Railway Company and the latter company has continued the same use down to the time of the filing of the appellants' cross-bills.

Appellants say that assuming the breach of the condition subsequent did occur in 1926, the statute of limitations, section 8-5, *supra,* has not run against them. They base this contention on the well-settled rule that where possession is taken or held under or in privity with the true owner, such possession does not

change into an adverse possession until notice of a purpose to claim adversely is brought home to the other party, which admittedly was not done here. *Creekmur* v. *Creekmur,* 75 Va. 430; *Hulvey* v. *Hulvey,* 92 Va. 182, 23 S. E. 233; *Matthews* v. *Freeman Co.,* 191 Va. 385, 60 S. E. (2d) 909; 1 Michie's Jur., Adverse Possession, § 38, p. 247.

■ Appellees' title, however, does not depend upon a possession adverse to appellants, but upon the deed of appellants' ancestor, under which they are in possession. The title of the appellees was derived through the Johnson deed, which conveyed to their predecessor the fee simple title to the property, subject only to be divested by the happening of a condition subsequent. A breach of that condition occurred in 1926, giving rise to a right of re-entry by the Johnson devisees, and the origin of the only claim they have to the land. They failed to assert this right or claim within the period allowed them by the statute, and hence the title and possession of the appellees continue unaffected by the breach of the condition.

■ It is stipulated that none of the parties had actual knowledge of the reverter clause in the Johnson deed until 1949, but appellants concede in their brief that their ignorance of the breach of the condition did not prevent the running of the statute. *Vashon* v. *Barrett,* 99 Va. 344, 38 S. E. 200; *Page* v. *Shenandoah Life Ins. Co.,* 185 Va. 919, 40 S. E. (2d) 922; 54 C. J. S., Limitations of Actions, § 205, p. 216.

The trial court decided correctly and its decree is

*Affirmed.*