## CIRCUIT COURT OF FAIRFAX COUNTY

Digital Support Corp.

v.

Maria T. Avery

Fred O. Cornett, Jr.

v.

Maria T. Avery

v.

Cornett Financial Services, Inc.

July 13, 1999

Case Nos. (Chancery) 157609 and 157610 (consolidated)

BY JUDGE JONATHAN C. THACHER

This matter came before the Court on Defendant's Plea in Bar. The Court has considered the written and oral arguments of counsel and the relevant authorities. For the reasons set forth in this opinion letter, Defendant's Plea in Bar is sustained.

*Facts and Procedural History*

On August 31, 1994, Network Technology, Inc. ("NTI"), the predecessor in interest to Digital Support Corp. ("DSC") entered into a contract (the "contract") with Ms. Maria T. Avery, the President and sole shareholder of

PCB Technology Corp. ("PCB"), for the purchase of stock in PCB. On the same day, Fred O. Cornett, Jr., entered into an agreement with Ms. Avery also for the purchase of stock in PCB. Ms. Avery claims the two agreements are part of the same contract; DSC claims that they are separate and distinct agreements.

On August 31, 1994, Ms. Avery signed a receipt to NTI acknowledging receipt of partial payment in the amount of $7,500.00 for the purchase of 1,110 shares of PCB stock and stating that the shares would be issued on September 6, 1994. On September 6, 1994, Ms. Avery signed another receipt acknowledging payment of $7,602.00 toward the purchase of 1,110 shares of PCB stock and also acknowledging that these funds represented a final payment. The receipt also stated that PCB would issue 1,110 shares of stock but did not indicate a date for such stock to be issued. Meanwhile, Cornett Financial Services, Inc. ("CFSI") paid Avery $4,898.00 also for 360 shares of stock in PCB, and Ms. Avery signed a receipt to it on August 31, 1994.

On October 26, 1998, DSC, successor in interest to NTI, and Mr. Cornett each sued Ms. Avery for specific performance to tender the stock in PCB. On March 5, 1999, Ms. Avery filed this Plea in Bar. On March 19, 1999, Complainants' actions were consolidated pursuant to this Court's order, and the Complainants then filed a joint response to the Plea in Bar. The court asked for supplemental briefs as to the issue of whether the receipts constituted a written contract.

## Analysis

Equity follows the law. Whatever agreement existed must be examined to determine if it is an oral or a written contract. This analysis first looks at the circumstances surrounding the execution of the writings and then determines whether the essential terms of the agreement were clear on the face of the writings.

## I. *The Statute of Limitations Applies to Cases Brought in Equity*

The statute of limitations applies to the matter at hand even though the case was brought in equity. "It is a well-established principle uniformly acted upon by courts of equity, that in respect to the statute of limitations equity follows the law; and if a legal demand be asserted in equity which at law is barred by statute, it is equally barred in equity." *Belcher v. Kirkwood*, 238 Va. 430, 433, 383 S.E.2d 729, 731 (1989), quoting *Sanford v. Sims*, 192 Va. 644,

649, 66 S.E.2d 495, 498 (1951). In the case at bar, even though the bill of complaint was brought in equity, rules of law, including the statute of limitations, must be followed.

## II. *The Agreement is an Oral Contract, Not a Written Contract*

Under § 8.01-246(2) of the Code of Virginia (1950), the statute of limitations for a written contract is five years; under § 8.01-246(4), the statute of limitations for an oral contract is three years. The issue in this case is whether exhibits 7, 8, and 9 (the receipts) constitute a written contract or a memorandum of a prior oral contract.

### A. *The Circumstances Surrounding the Execution of the Receipts Dictate that the Agreement is an Oral Contract*

"It is frequently difficult to determine whether an instrument is a mere receipt or a release in the nature of a receipt, or is contractual in its character. The circumstances surrounding its execution are therefore helpful, in the determination of that question." *Kirkbride v. Keys Planing Mill Co.*, 116 Va. 680, 683, 82 S.E. 750, 751 (1914). In this case, there are three corporations experienced in dealing with third party contracts. It is unreasonable to assume that any of the parties did not know or understand that the agreement should be put in writing to create certainty. The canceled checks could have been used as the receipts, but those checks do not exclude any other form of receipt from being used. "There must be a valid oral contract, however, of which the [writings are] an accurate statement, though not necessarily made with that intent ... It is the oral contract which is enforced." *Browder v. Mitchell*, 187 Va. 781, 785, 48 S.E.2d 221, 223 (1948), quoting 2 Samuel Williston, *Williston on Contracts*, § 567, at 1618-19, § 590, at 1701 (Rev. Ed.). The parties could have easily drafted a document which would have constituted a written contract, but they did not. Thus, the writings are merely receipts which memorialize the oral contract but do not merge it into a written contract.

### B. *The Essential Terms of the Agreement Are Not Obvious*

In order to constitute a written contract, the "essential terms of the agreement must be obvious on the face of the writing without recourse to parol evidence." *Janus v. Sproul*, 250 Va. 90, 91, 458 S.E.2d 300, 301 (1995), quoting *Rahm v. Klerner*, 99 Va. 10, 14, 37 S.E. 292, 293 (1900). The

writings are unclear as to whether the stock was being issued or transferred and by whom, either Ms. Avery or PCB. Further, if the writings were intended as a valid written contract, then NTI and CFSI should have had the exhibits rewritten to more clearly delineate the agreement since in their own brief they characterize the documents are containing "slightly different, sometimes inarticulate language." (Complainants' "Supplemental Brief in Opposition to Defendant's Plea in Bar and Motion to Dismiss for Lack of Subject Matter Jurisdiction" at 3.) Even without the written contract, DSC and CFSI, experienced bargainers dealing at arm's length with Ms. Avery, had ample opportunity to exercise their rights, but instead chose to sit on their rights for over four years.

It is obvious that something went wrong with the agreement when Ms. Avery failed to issue the shares of PCB stock on September 6, 1994, as she had promised in her receipt of August 31, 1994. However, DSC (NTI's successor in interest), Mr. Cornett, and CFSI waited until October 26, 1998, to sue for specific performance.

Therefore, the essential terms of the document are not "obvious on the face of the writing[s] without recourse to parol evidence" and hence, the writings do not constitute a valid written contract. *Janus*, 250 Va. at 91, 458 S.E.2d at 301.

## Conclusion

Since the exhibits merely memorialize a prior oral contract, the applicable statute of limitations is three years. Va. Code Ann. § 8.01-246(4) (1950). The statute of limitations was exceeded in this case, and therefore, the Plea in Bar must be sustained.