Present:  All the Justices

COMMONWEALTH TRANSPORTATION COMMISSIONER

                                        OPINION BY
v.  Record No. 051335          JUSTICE LAWRENCE L. KOONTZ, JR.
                                        June 8, 2006
WINDSOR INDUSTRIES, INC.

            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                    Herbert C. Gill, Jr., Judge


        In this appeal, we consider whether the chancellor

correctly determined in a declaratory judgment action that

property acquired by the Commonwealth of Virginia in 1973 should

be reconveyed by the Commonwealth Transportation Commissioner to

the successor-in-interest of the original owner for the original

purchase price by operation of Code § 33.1-90.[1]

_____

        [1] The parties do not dispute that in 1973 the Commonwealth
of Virginia acquired the property in question on behalf of its
agency formerly designated as the Department of Highways and now
designated as the Virginia Department of Transportation.  In the
intervening years, the agency and its directing authority have
undergone several changes of designation, though the
responsibilities of each remained essentially unchanged.  The
agency is now subject to the direction of the Commonwealth
Transportation Board, which is chaired by the Secretary of
Transportation.  Code § 33.1-1.  The Commonwealth Transportation
Commissioner is the vice-chair of the Board and the
administrative head of the agency. Id.; Code § 33.1-3.  For
clarity in this opinion, we will refer to the Virginia
Department of Transportation as "VDOT" and to the Commonwealth
Transportation Commissioner as "the Commissioner" in accord with
the current designations.

1

BACKGROUND

The issues raised in this appeal are questions of law decided by the chancellor on the written record and cross-motions for summary judgment by the parties, and the facts are undisputed.  Accordingly, we will review the record and consider the issues de novo.  See, e.g., Davenport v. Little-Bowser, 269 Va. 546, 552, 611 S.E.2d 366, 369 (2005); Wilby v. Gostel, 265 Va. 437, 440, 578 S.E.2d 796, 798 (2003); Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002).

By a deed dated October 1, 1973 and recorded on November 27, 1973 among the appropriate land records, 1314 West Main Corporation conveyed to the Commonwealth of Virginia in fee simple two lots consisting of 1.773 acres, more or less, in Chesterfield County for $21,000.  The property was acquired in anticipation of its eventual use by VDOT in State Highway Project 0288-020-101, RW-204, for the construction and improvement of Route 288, a non-interstate highway.  J. Kenneth Timmons, Jr. ("Timmons") executed the deed in his capacity as president of 1314 West Main Corporation.

On March 31, 1977, 1314 West Main Corporation merged with another entity of which Timmons was also president to become Windsor Industries, Inc.  At that time, Timmons became president

2

of Windsor Industries, as well as its majority stockholder. Windsor Industries was dissolved by operation of law as of September 1, 1988 after failing to pay its annual registration fee to the State Corporation Commission.

In a letter dated September 10, 2002 to David A. Schneider, the District Right of Way and Utilities Manager for VDOT's Richmond District, Timmons sought reconveyance of the 1314 West Main Corporation property pursuant to Code § 33.1-90. In that letter, Timmons stated that "[a]bout 3 years ago I contacted [VDOT] and asked them to consider conveying the lots to me for the consideration that I received in 1973. I was told that the lots would be used temporarily for the construction office for the contractor doing work on Route 711." Noting that "[t]he work on [Route] 711 seems to be completed," Timmons requested that VDOT reconvey these lots to him for the consideration of $21,000.

After an unexplained delay of over a year, Schneider responded to Timmons in a letter dated November 21, 2003. Noting that "Windsor Industries, Inc., the successor to 1314 West Main Corporation, was dissolved as of September 1, 1988," Schneider maintained that "[t]he ability of Windsor to demand reconveyance under the law did not arise until twenty years after the acquisition. This would have been November 27, 1993,

3

at the latest." Schneider further maintained that "[a]t that time Windsor Industries had been dissolved and its right to request restoration had expired." Schneider advised Timmons that "because the property is suitable for independent development, VDOT will offer the property for sale to the public at its current fair market value."

On January 7, 2004, counsel for Timmons wrote to Schneider contesting Schneider's determination that the dissolution of Windsor Industries "extinguished" the right to seek reconveyance of the 1314 West Main Corporation property under Code § 33.1-90. Rather, counsel contended that Timmons, as the sole director of the dissolved corporation, had the authority under Code § 13.1-745 to control the assets of the dissolved corporation and "to pursue remedies which existed prior to [the corporation's] termination" including the ability "to convey property which has been overlooked or not conveyed for some reason in a liquidation."

Subsequently, Timmons and his counsel met with Schneider and another VDOT employee to discuss the matter. Following that meeting, Timmons' counsel by a letter dated July 6, 2004 reiterated "some of the points that were made at" the meeting. It was Timmons' position that Code § 33.1-90, as in effect when the property was conveyed in 1973, permitted the successor or

4

assignee of 1314 West Main Corporation to seek reconveyance of the property and that the statute placed no time limit on when the seller is required to demand that reconveyance.

On July 14, 2004, VDOT advised Timmons' counsel that one of the two lots previously conveyed to the Commonwealth by 1314 West Main Corporation would be offered for sale by sealed bid on August 2, 2004.  VDOT provided Timmons' counsel with a copy of the public notice of the sale and the necessary forms to permit Timmons to submit a bid for the lot.

On July 22, 2004, Timmons' counsel filed in the trial court a motion for declaratory judgment on behalf of Windsor Industries, "a Virginia corporation in dissolution, proceeding under Section 13.1-745 of the Code of Virginia (as amended), successor in title and interest to 1314 West Main Corporation," against the Commissioner.  Windsor Industries sought a determination that it was entitled to reconveyance of the 1314 West Main Corporation property under Code § 33.1-90.  Pending resolution of that matter, Windsor Industries also sought a temporary restraining order barring the Commissioner from going forward with the planned sale on August 2, 2004.

Following a hearing on Windsor Industries' request for a temporary restraining order and over the Commissioner's objection, the chancellor granted Windsor Industries the

5

requested injunction. VDOT thereafter complied with the injunction order and also halted the planned sale of the second lot previously owned by 1314 West Main Corporation pending the outcome of the declaratory judgment action.[2]

In his answer to the motion for declaratory judgment, the Commissioner asserted a plethora of legal and equitable theories under which he contended Windsor Industries should be barred from seeking reconveyance of the 1314 West Main Corporation property. Ultimately, Windsor Industries and the Commissioner filed cross-motions for summary judgment supported by memoranda of law.

The chancellor heard oral argument from the parties and took the matter under advisement. On February 3, 2005, the chancellor issued an opinion letter stating that "[a]ccording to the parties there are four issues to be determined by the [c]ourt." The chancellor summarized those issues as follows:

> (1) What is the nature of the inchoate statutory benefit [of Code § 33.1-90]? (2) Was it possible for Windsor Industries, Inc. ("Windsor"), a subsequent corporation, to obtain the reconveyance opportunity?

---

[2] While the precise status of the second lot is not established in the record before us, the motion for declaratory judgment clearly referenced the entire parcel of land acquired by the Commonwealth under the 1973 deed, and the Commissioner does not contend that the chancellor's judgment was limited in its effect to only one lot in that parcel. Accordingly, our reference herein to the 1314 West Main Corporation property is intended to include the entire parcel consisting of two lots.

(3) When did the reconveyance opportunity come into existence, if at all? (4) Has Windsor waited too long in making its demand upon the Commonwealth?

The chancellor initially concluded that, pursuant to Code § 13.1-745(B), a dissolved corporation such as Windsor Industries "retains its directors as trustees of corporate assets by operation of law." The chancellor further concluded that "Mr. Timmons fits this definition and is thus a proper party to make written demand for reconveyance on the Commonwealth."

The chancellor then addressed the respective positions of the parties, considering first what result would obtain if Code § 33.1-90 created a property right in the form of a possibility of reverter, as Windsor Industries contended, and then the result which would obtain under the Commissioner's contention that the statute created only "a legislative gratuity that could be withdrawn or redistributed at any time without creating a constitutional issue." The chancellor opined that although a possibility of reverter is not a vested property right, it is a property right subject to vesting and, therefore, cannot be subsequently modified by statutory amendment. Thus, the chancellor, citing Code § 1-16 and Citizens Mutual Building Association v. Edwards, 167 Va. 399, 404, 189 S.E. 453, 455 (1937), opined that if Windsor Industries, as the successor of

7

1314 West Main Corporation, received a possibility of reverter under Code § 33.1-90, the contingencies for reversion and the vesting of the right to reconveyance of the property were established by the version of the statute as it was in force at the time of the original transfer of the property in 1973. Under this reasoning, the chancellor concluded that Windsor Industries' "right to make demand on the Commonwealth would have commenced in 1984 [prior to the corporation's dissolution in 1988]" and Windsor Industries "would have a successful claim, subject to the issue of the timeliness" of its claim.

The chancellor then considered what effect the statute would have if it provided only a "legislative gratuity."  The chancellor noted that "[t]his argument is primarily based on federal case law arising from other states, and the [c]ourt is not convinced that such a concept is the law of this Commonwealth."  See, e.g., Harrison v. Phillips, 185 F. Supp. 204, 207 (S.D. Tex. 1960).  Nonetheless, the chancellor concluded that even by accepting the Commissioner's contention, Windsor Industries would still be entitled to seek reconveyance of the property in question because the various versions of the statute resulting from subsequent amendments of Code § 33.1-90 never expressly limited or withdrew the contingent right of the original property owner for reconveyance, and the current

8

version provides for specific time periods in which the demand for reconveyance must be made. The chancellor noted that one of those time periods is "within thirty days from publication in a newspaper" of VDOT's notice of intent to offer the property for sale to the public. The chancellor opined that Timmons' original written demand on VDOT, which the chancellor concluded had resulted in the Commissioner's decision to offer the property in question for sale, and the filing of the declaratory judgment action within 30 days of the Commissioner's notice of the intent to sell, "equate to substantial compliance with [Code § 33.1-90]."

The chancellor did not expressly decide whether Windsor Industries' authority to seek reconveyance was premised upon a property right in the form of a possibility of reverter or a mere statutory gratuity. Rather, the chancellor determined that under either rationale the demand for reconveyance made in 2002 was not barred by the express terms of any version of Code § 33.1-90.

The chancellor then considered the Commissioner's assertions that Windsor Industries' demand for reconveyance was untimely. The chancellor first concluded that the former one-year limitation of Code § 8.01-248, which the Commissioner relied upon, did not apply to a claim involving real property.

9

Gilley v. Nidermaier, 176 Va. 32, 41, 10 S.E.2d 484, 488 (1940). Additionally, the chancellor opined that "[t]here is no statute of limitations that is applicable to the right to demand reconveyance under § 33.1-90." The chancellor further concluded that laches could not apply to the claim for reconveyance because despite "a substantial delay in the exercise of the reconveyance opportunity . . . the Commissioner has simply not been prejudiced by this delay." Thus, the chancellor concluded that under any version of Code § 33.1-90, the demand for reconveyance in this case was not untimely or barred by laches.

The Commissioner filed a motion for reconsideration. After receiving briefs from both parties, the chancellor advised the parties in a letter dated March 17, 2005 that he remained of opinion that Windsor Industries was entitled to reconveyance of the property. In a final decree dated March 30, 2005, incorporating by reference the rationale stated in the prior opinion letters, the chancellor entered judgment for Windsor Industries. The final decree expressly directed that "upon payment to the Commonwealth Transportation Commissioner of the original purchase price, with no interest, the Commissioner shall forthwith re-convey to [Windsor Industries], or its assigns, by appropriate deed, the [1314 West Main Corporation] property." We awarded the Commissioner this appeal.

10

DISCUSSION

Initially, we note that although the 1973 deed by which the Commissioner obtained the property in question on behalf of the Commonwealth did not reference Code § 33.1-90, the Commissioner does not dispute that the acquisition of the property was consummated subject to the provisions of that statute. We also note that this deed did not create a true reversion or vested property right in favor of the grantor, 1314 West Main Corporation, at that time.

While the chancellor concluded that it was unnecessary to determine "the specific nature of the inchoate statutory benefit" created by Code § 33.1-90, the resolution of this issue is central to our analysis in this appeal. Thus, we begin our analysis by determining what right or interest, if any, the General Assembly intended to give a property owner by providing for the possible reconveyance of property acquired by the Commissioner in 1973 pursuant to Code § 33.1-90.

On brief, the Commissioner appropriately describes the purchase of the 1314 West Main Corporation property as an "advanced acquisition." This term is not defined in the Code of Virginia. However, there can be no doubt that such an acquisition of real property by the Commissioner is advantageous to the Commonwealth by facilitating the timely and economical

11

acquisition of real property for transportation construction or improvement which the Commissioner anticipates will be needed in the future. Advance acquisitions of property for transportation projects by the Commissioner are the subject matter of Code § 33.1-90, which in 1973 and in its current version provide that the Commissioner determine in advance of acquisition that the property will be required for construction of a transportation project that does not involve the Interstate Highway System, such as the present case, within 10 years of his determination.

At the time the Commissioner acquired the property in question, Code § 33.1-90 provided, in pertinent part, with regard to the property owner that:

> In the event that the highway project . . . contemplated has not been let to contract or construction commenced within a period of . . . eleven years . . . from the date of the acquisition of such property, upon written demand of the owner or owners, their heirs, or assigns, such property shall be re-conveyed by the Commonwealth of Virginia to such owner or owners, their heirs or assigns, upon repayment of the original purchase price, without interest.

Former Code § 33.1-90 (Supp. 1973).

The Commissioner maintains that this provision of Code § 33.1-90 creates merely "an inchoate statutory right," which he says "is analogous to the inchoate dower right" once provided for by statute. Like rights of dower, the Commissioner maintains that the right granted to the landowner by Code

12

§ 33.1-90 is a "statutory gratuity" subject to alteration or revocation by the General Assembly. Upon this premise, the Commissioner contends that at the time it sold the property in question to the Commonwealth, 1314 West Main Corporation retained no right or estate in the property. Accordingly, the Commissioner further contends that Windsor Industries, as successor in interest to 1314 West Main Corporation, could not acquire the right to exercise the "statutory gratuity" granted by Code § 33.1-90, because that right had not yet accrued at the time Windsor Industries was dissolved as a corporation.

In contrast, Windsor Industries contends that Code § 33.1-90, as it was in effect at the time the property was conveyed to the Commonwealth in 1973, created a property right in the form of a "possibility of reverter." As a property right, the possibility of reverter was assignable as part of the assets of 1314 West Main Corporation when that entity merged with another to create Windsor Industries and, thus, was an asset of Windsor Industries at the time of its dissolution. Accordingly, Windsor Industries contends that Timmons, as the principal officer and majority stockholder of Windsor Industries, was empowered as a trustee of the dissolved corporation to exercise the possibility of reverter if and when it accrued.

13

" 'A possibility of reverter . . . is not an estate, present or future, but a possibility of having an estate.' " Sanford v. Sims, 192 Va. 644, 648, 66 S.E.2d 495, 497 (1951) (quoting Copenhaver v. Pendleton, 155 Va. 463, 479, 155 S.E. 802, 806 (1930)).  " 'In the case of a fee limited upon a condition subsequent [a possibility of reverter] is a contingent right of re-entry upon condition broken.' "[3]  Id.

The 1973 version of Code § 33.1-90 expressly provided the conditions subsequent or contingencies which limited the fee simple ownership obtained by the Commonwealth in the property in question.  As material to the present case, those contingencies were that the anticipated highway project not be let to contract or construction commenced within a period of 11 years from the date of the acquisition of the property by the Commonwealth.  Upon the occurrence of either contingency, the statute authorized the original owner, or its assigns, to demand

_____

[3] A possibility of reverter may also arise where a grant or devise creates a "qualified fee limited to determine upon a contingency which may never happen."  In such a case, the occurrence of the contingency results in the immediate revesting of the fee.  The person entitled to the fee does not have to make a re-entry.  Copenhaver, 155 Va. at 479, 155 S.E. at 806. As will become apparent, here we are not concerned with this form of a possibility of reverter because the statute clearly requires affirmative action in the form of a written demand on the part of one claiming the right to enforce a breach of a condition subsequent.

14

reconveyance of the property by the Commonwealth.  Upon a written demand, the statute provided that the property "shall be reconveyed."  These provisions of the statute clearly evince the intent of the General Assembly to grant a landowner more than a mere "statutory gratuity."  Rather, we are of opinion that the General Assembly intended to grant the property owner a contingent right to reconveyance of the property acquired by the Commonwealth in anticipation of its need for a public highway project if the property so acquired is not ultimately used for that purpose within 11 years.  Accordingly, we hold that upon conveying its property to the Commonwealth on October 1, 1973, 1314 West Main Corporation was granted an interest in that property in the form of a possibility of reverter pursuant to Code § 33.1-90.

However, a possibility of a reverter, while an interest in real property, does not accrue into an enforceable right to reconveyance until the contingencies for the forfeiture of the fee occur.  See Copenhaver, 155 Va. at 478, 155 S.E. at 806.  Thus, at the time of the 1973 conveyance, 1314 West Main Corporation had "only a bare possibility that the land [would] return to [it], upon the happening or failure to happen of the various contingencies upon which the estate granted [depended].  The interest of the grantor [was] purely contingent."  Id.

15

(quoting 1 Frederick D.G. Ribble, Minor on Real Property § 780, at 1012-14 (2d ed. 1928)) (emphasis in original). Accordingly, we now consider whether 1314 West Main Corporation's possibility of reverter ripened into an enforceable right to reconveyance and, if so, when that occurred. Sanford is particularly instructive on this point.

> Where there is a breach of a condition subsequent upon which the possibility of reverter depends, the estate vested in the grantee does not cease in him and revest ipso facto in the grantor or his successors, but remains unimpaired in the grantee or his successors until entry, or its equivalent, by the grantor or his successors; for the right to enforce the forfeiture may be waived, and the law, favoring the vested estate, will not permit its destruction until the right to forfeit has been exercised.

Sanford, 192 Va. at 649, 66 S.E.2d at 497; see also Copenhaver, 155 Va. at 479, 155 S.E. at 806.

In this case, as we have noted, the possibility of reverter was granted by Code § 33.1-90 rather than by the terms of the 1973 deed conveying the property to the Commonwealth. In addition to the contingencies upon which the possibility of reverter depended in order to accrue into an enforceable right, the statute established the procedures for the property owner to exercise that right. In this context, the statute is broad in scope. Thus, we are of opinion that until the possibility of having an estate in the property vested into an enforceable right, the contingencies upon which it depended and the

procedures for exercising the right accrued remained subject to modification by future amendment. Such modification includes extending the period of time before the right could accrue and also establishing periods of limitation on enforcing the right, so long as such amendment did not fully extinguish the former owner's possibility of reverter. See, e.g., Haas v. Lee, 263 Va. 273, 276, 560 S.E.2d 256, 257-58 (2002) (holding that "matters of procedure, such as statutes of limitations, may be altered or curtailed by the legislature if a reasonable opportunity and time are afforded to enforce and protect any interests and rights, provided vested interests and contractual rights are neither impaired nor destroyed"); see also Board of Supervisors v. FCS Bldg. Ass'n, 254 Va. 464, 467, 492 S.E.2d 634, 636 (1997); Harris v. DiMattina, 250 Va. 306, 313, 462 S.E.2d 338, 341 (1995); Buenson Div., Aeronca, Inc. v. McCauley, 221 Va. 430, 432, 270 S.E.2d 734, 735-36 (1980).

Prior to 1314 West Main Corporation's possibility of reverter ripening into an accrued right, in 1983 the General Assembly amended Code § 33.1-90. 1983 Acts ch. 146.[4] In

---

[4] Code § 33.1-90 has been amended a number of times since 1983, but generally those amendments are not material to the issues presented in this appeal. Accordingly, we will only reference those amendments that are germane to our analysis without addressing the full provisions of those amendments. See

pertinent part, the 1983 amendment changed the time for letting the transportation project to contract or commencing construction on the property from 11 to 20 years. Id. The Commissioner does not dispute that in the 20 years following its acquisition, the 1314 West Main Corporation property had not been permanently utilized in a project for the construction or improvement of Route 288.[5] Thus, the first date on which 1314 West Main Corporation or its successor potentially could have obtained the right to demand reconveyance would have been October 1, 1993, rather than in 1984.

As the quoted passage from Sanford, supra, makes clear, however, when there has been an actual breach of a condition subsequent upon which a possibility of reverter depends, as in this case, the fee vested in the Commonwealth by the 1973 deed did not automatically revest in the original grantor or its successor. Rather, the original grantor, or its successor, was required to make "entry, or its equivalent" to exercise the right to reconveyance. The landowner does so by "written

---

1988 Acts. ch. 80, 1992 Acts ch. 108, 1998 Acts ch. 426, and 2000 Acts ch. 898.

[5] The record suggests that the property was used for subsidiary support for this and other road improvement projects over the years, but that no permanent improvements were made on the property itself.

18

demand" pursuant to the provisions of Code § 33.1-90.

Significantly, the 1973 and 1983 versions of the statute placed no time limitation within which the demand was required to be made. No written demand for reconveyance was made until at least 1999, when Timmons made his first inquiry to VDOT concerning the property. Thus, before that date, the Commonwealth remained vested with title to the property, and the contingencies and procedures for making the demand for reconveyance remained subject to change by amendment of Code § 33.1-90.

In 1997, the General Assembly extensively revised Code § 33.1-90 and significantly altered the procedures under which a former owner of property acquired by the Commonwealth could demand reconveyance of that property. 1997 Acts ch. 93. As relevant to this case, Code § 33.1-90 was amended to provide that:

> If the transportation project contemplated . . . has not been let to contract or construction commenced within a period of twenty years from the date of the acquisition of such property and a need for the use of such property has not been determined for any alternative transportation project, upon written demand of the owner or owners, their heirs or assigns, received within ninety days from the expiration of such twenty-year period . . . or within thirty days from publication in a newspaper of general circulation in the political subdivision in which the property is located of a notice of the Commissioner's intent to dispose of such property and [the Commissioner] shall notify to the extent practical, the last known

19

owner(s) of said property by certified mail, such property shall be reconveyed by the Commonwealth of Virginia to such owner or owners, their heirs or assigns, upon repayment of the original purchase price, without interest. Unless the reconveyance is concluded no later than six months from the receipt by the Commissioner of a written demand, the reconveyance opportunity shall lapse.

(Emphasis added.)

In addition to altering the contingency upon which the possibility of reverter depended so as to permit the Commissioner to assess the property for use in an alternative transportation project, the clear import of this change in the law was to provide for specific time periods in which the written demand for reconveyance is required to be made upon the occurrence of one or more of the contingencies and to require any such reconveyance to occur in a timely manner. The provisions of the statute accomplish this in principal part by requiring the Commissioner, upon determining that the property acquired pursuant to the statute is not needed for a transportation project and will be offered for sale to the public, to give notice of that intended sale, and to make a bona fide effort to locate the original owner or his heirs or assigns, who would then be required by written demand to seek reconveyance of the property within 30 days of that notice. As the chancellor correctly noted, this notice requirement and the corresponding requirement that the written demand be made within

20

30 days thereafter are stated in the disjunctive and, thus, are not dependant upon a prior timely demand having been made by the former owner within 90 days from the expiration of the 20 year designated timeframe.

The provisions in the 1997 amendment to Code § 33.1-90 were clearly intended to provide certainty in the disposition of property acquired by the Commissioner for anticipated transportation projects, while allowing sufficient time and opportunity for VDOT to use the property so acquired to the best interest of the public. The salutary function of the amendment is to make certain that, to the extent practicable, property acquired by "advance acquisition" but not ultimately used for any public transportation project should be reconveyed to the original owner, provided the owner can be found and desires to recover it for the original purchase price. As pertinent to the present case, the provisions of the 1997 version of Code § 33.1-90 became applicable to the determination of when the possibility of reverter under consideration ripened into an enforceable right to reconveyance. This is so because the prior versions of the statute placed no time limitation within which the landowner was required to make a written demand for reconveyance and, thus, avoid a waiver of the right to enforce the forfeiture.

21

In determining when the possibility of reverter granted by Code § 33.1-90 ripens or accrues into an enforceable right to reconveyance, the comprehensive structure of the statute is significant. As amended in 1997, the statute provides not only the contingencies upon which this property right depends, but also the method and time limitations for exercising that contingent right in the event of the occurrence, or breach, of those contingencies. The statute necessarily permits the Commissioner to refuse a written demand for reconveyance made within 90 days from the expiration of the 20-year period when the Commissioner has determined a need to use the property for any "alternative transportation project." Implicit in the statute's requirement that the original property owner make a written demand is that the right to enforce reconveyance accrues when and if the demand is refused by the Commissioner without proper justification. In the absence of a written demand and refusal by the Commissioner following expiration of the 20-year period, the statute permits the original property owner to make a written demand for reconveyance within 30 days from the publication of the Commissioner's intent to dispose of the property to the public. Without question, that publication invokes the statute's requirement that the owner make a written demand to enforce its then accrued right to reconveyance within

22

30 days of that publication in order to avoid a waiver of that right.

In the present case, the property in question was not let to contract or had construction commenced on it within 20 years of its acquisition. Assuming that the inquiry made in 1999 and alluded to in Timmons' September 10, 2002 letter, was a demand for reconveyance, it was not made within the 90 day requirement of the statute as in effect on that date. Moreover, because it would appear that the Commissioner had determined that the property was amenable for use in an "alternative transportation project" for construction work on Route 711, even if the demand had been timely, the Commissioner was statutorily authorized to retain the property and refuse the demand.

However, when the Commissioner subsequently determined that the property was no longer needed for any alternative transportation project and that it would be offered for sale to the public, the possibility of reverter vested into an enforceable right, and the alternative procedure for exercising that right pursuant to Code § 33.1-90 as in effect at that time became operative. We agree with the chancellor that the publication of notice of the intent to sell triggered the 30 day time period in which 1314 West Main Corporation or its successor could again demand reconveyance of the property at its original

23

price.[6]  We further agree that the initiation of the declaratory judgment action within 30 days of that notice constituted substantial compliance with the requirement for a written demand for reconveyance.  Accordingly, we hold that the terms of Code § 33.1-90 for reconveyance of the property to its original owner, or its assigns, have been met.

The Commissioner contends, however, that even if Code § 33.1-90 provides the original owner of property acquired by the Commissioner with a continuing property interest in the form of a possibility of reverter, Windsor Industries never acquired that interest.  Because that interest could not accrue into an enforceable right to reconveyance before October 1, 1993, the Commissioner contends that there was no vested property right for 1314 West Main Corporation to assign to Windsor Industries in 1977 when the later entity was created and received the assets of the former.  We disagree.

While a possibility of reverter is not a vested interest in real property, it is a property interest.  Although

---

[6] While the record contains a copy of the public notice of sale, it does not contain a certification that this notice was published in a newspaper of general circulation as required by the statute.  However, we will assume that such is the case because we will not presume that the Commissioner would have intended to proceed with the sale of the property in question on August 2, 2004 without fully complying with the notice requirements of the statute.

possibilities of reverter were inalienable at common law, they are alienable by both deed and will under the provisions of Code §§ 55-6 and 64.1-46. See Sanford, 192 Va. at 648, 66 S.E.2d at 497; Copenhaver, 155 Va. at 496, 155 S.E. at 812. Accordingly, though not yet an accrued right of re-entry, the possibility of reverter of the 1314 West Main Corporation property was an alienable property interest, which Windsor Industries acquired when the former entity was merged into the latter.

The Commissioner further contends that a dissolved corporation cannot seek to enforce a right that accrues after its dissolution. Again, we disagree.

While it is true that a corporation in dissolution cannot "carry on any business except that appropriate to wind up and liquidate its business and affairs," it nevertheless "continues its corporate existence" and the trustees of the dissolved corporation are nonetheless required to collect and account for the corporation's assets. Code § 13.1-745(A). Moreover, until the winding up of affairs of the corporation are concluded, the fact of dissolution does not "[p]revent commencement of a proceeding by or against the corporation in its corporate name." Code § 13.1-745(B).

In this case, the possibility of reverter was a property interest of Windsor Industries and, thus, was an asset of the

corporation at the time of its dissolution.  The duty of Timmons, as the principal stockholder and chief executive officer of the corporation, was to act as a trustee in dissolution and secure that asset for proper distribution to the dissolved corporation's creditors and/or stockholders.  See, e.g., Craddock-Terry Co. v. Powell, 181 Va. 417, 451, 25 S.E.2d 363, 377 (1943) (holding that "[o]n dissolution, the board of directors of a corporation . . . holds the assets as a trustee to be paid or distributed to . . . stockholders").  The fact that the possibility of reverter had not accrued into an enforceable right to reconveyance of the property in question at that time is not relevant.  Accordingly, we hold that Timmons, as trustee of the assets of the dissolved Windsor Industries, was the proper party to make demand on the Commissioner for reconveyance of the 1314 West Main Corporation property and the subsequent declaratory judgment action was properly filed in the name of Windsor Industries pursuant to Code § 13.1-745.

Finally, we turn to consider the Commissioner's remaining assertion that Windsor Industries' claim for reconveyance is time-barred either by operation of Code § 8.01-248, Code § 8.01-246(4), or upon the application of the doctrine of laches.  The Commissioner's reliance upon these statutes is misplaced; nor do we agree with the assertion that in the absence of their

26

applicability there is no statute of limitations that is applicable to the right to demand reconveyance under Code § 33.1-90.

Although not mentioned by the Commissioner, we take this opportunity to note that Code § 8.01-255.1, among other things, applies to actions for re-entry on land by reason of a breach of a condition subsequent and imposes a limitation of 10 years for the action to be commenced or entry to be made from the time the breach of the condition occurs. Beyond question, this statute is applicable to a possibility of reverter such as, for example, one created by the provisions of a particular deed. However, in the case of a possibility of reverter granted to the landowner under the provisions of Code § 33.1-90, the provisions of Code § 8.01-255.1 are superseded by the more specific time limitations provided in Code § 33.1-90. The same rationale disposes of the Commissioner's reliance upon Code §§ 8.01-248 and -246(4). Our determination that Windsor Industries' demand for reconveyance, in the form of the motion for declaratory judgment, was timely under the 30 day requirement of Code § 33.1-90 results from the comprehensive and broad scope of the statute which in effect contains its own statute of limitations.

Similarly, the Commissioner's argument concerning the equitable doctrine of laches is misplaced. Although this case

27

was brought as a chancery action for declaratory judgment, as in Sanford, the "remedy for enforcing the forfeiture is purely legal." Id. at 649, 66 S.E.2d at 498. As was made clear in Sanford, where an action brought in equity is subject to a legal remedy, although the chancellor retains jurisdiction and can administer complete relief, "equity will respect the applicable statute of limitation[s]." Id.; see also Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity, 266 Va. 455, 467, 587 S.E.2d 701, 708 (2003); Belcher v. Kirkwood, 238 Va. 430, 433, 383 S.E.2d 729, 731 (1989).

CONCLUSION

For these reasons, we hold that the chancellor did not err in concluding that Windsor Industries was entitled to the reconveyance of the 1314 West Main Corporation property. Accordingly, we will affirm the judgment below requiring the Commissioner to convey the property to Windsor Industries, or its assigns, upon payment of the original purchase price of $21,000, with no interest.

Affirmed.