PRESENT: All the Justices

DAVID KALERGIS, ET AL.

v. Record No. 161347

OPINION BY
JUSTICE CLEO E. POWELL
October 26, 2017

COMMISSIONER OF HIGHWAYS,
COMMONWEALTH OF VIRGINIA, ET AL.

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

David and Mary Kalergis (collectively, "Kalergis") appeal from a decision of the Circuit Court of Albemarle County ("circuit court"). Kalergis sought to compel the Commissioner to reconvey property, previously acquired in advance of a transportation project, pursuant to Code § 33.2-1005(A). On appeal, Kalergis argues that the circuit court erred in sustaining a demurrer filed by the Commissioner of Highways ("Commissioner") in his capacity as chief executive officer of the Virginia Department of Transportation ("VDOT"). For the following reasons, we affirm the judgment of the circuit court where it found that it "[did] not have the authority based on the appraisal to insert a purchase price of $286,110 where the wording of the General Assembly is 'original purchase price.'"[1]

---

[1] The circuit court also found that because the property was substantially modified, Code § 33.2-1005(B) was the better statute to apply to the facts of this case. However, Code § 33.2-1005 does not mention "substantial modification of the property" as a reason for subsection (B) to apply to the facts of this case. The doctrine of judicial restraint dictates that we decide cases "'on the best and narrowest grounds available.'" *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010) (quoting *Air Courier Conference v. American Postal Workers Union*, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)). For the reasons set forth in this opinion, we find that the phrase "original purchase price," as used in Code § 33.2-1005(A), is unambiguous. Therefore, the Court need not address the circuit court's belief that subsection (B) was "the better statute."

## I.    BACKGROUND

Kalergis owned a 55-acre farm in Albemarle County ("the Property") that featured a house, guest house, swimming pool, stables, fencing, and terraces (collectively "Improvements").  In February 1994, VDOT acquired 26.01 acres ("the Land") of the Property, which included the Improvements, from Kalergis for $1,150,000 for use in a future highway project called the Western Bypass.  The original purchase price was recorded in the offer letter and on the deed.  The price was determined by an appraisal of the "market value of the Fee Simple ownership of the subject property."  The appraisal valued the Land at $286,110 and the Improvements at $863,890, for a total value of $1,150,000.[2]

On or about April 21, 2014, VDOT was notified in writing that Kalergis was exercising the right under Code § 33.2-1005(A) and its predecessor statute (Code § 33.1-90) to require VDOT to reconvey the Land "for its original purchase price" of $286,110, the value from the 1993 appraisal, as the transportation project had not commenced within 20 years.  VDOT either denied or did not respond to the first demand or the four subsequent demands made by Kalergis requesting reconveyance of the Land for $286,110.  In July 2014, the Commonwealth Transportation Board cancelled the Western Bypass project.

In November 2014, VDOT offered to reconvey the Land for the original $1,150,000 purchase price pursuant to Code § 33.2-1005(A), or for the current $780,000 fair market value of the Land pursuant to Code § 33.2-1005(B).  Kalergis refused the offer and again demanded that VDOT reconvey the Land for $286,110.

---

[2] In 1997, Kalergis repurchased the Improvements from VDOT for $30,000 with the intent to relocate them to part of the Property not sold to VDOT.  Kalergis was unable to relocate the Improvements and they were eventually demolished and removed.

On January 30, 2015, Kalergis sued VDOT seeking specific performance to reconvey the Land for $286,110 and a declaration that VDOT violated the provisions of Code § 33.2-1005(A). VDOT demurred arguing that there was no legal basis for Kalergis's requested relief, because the plain language of Code § 33.2-1005(A) only provides for the reconveyance of property "upon repayment of the original purchase price," not for some portion of the appraised value.

In response, Kalergis argued that "purchase price" in Code § 33.2-1005(A) refers to the "price paid for the property that is subject to reconveyance," and the statute "cannot be read to permit the Commonwealth to profit from a taking without constructing anything for the public benefit" or to "render meaningless the General Assembly's instruction to itemize the price for the property – land and improvements – taken from the owner." Kalergis argued that Code § 33.2-1005(A) "requires that the landowner first be given an opportunity to purchase the property back for the original price," and the fair market value process in Code § 33.2-1005(B) only applies if the original owner declines.

Thereafter, the circuit court issued a letter opinion sustaining the demurrer. The circuit court found that Code § 33.2-1005(A) did not apply, because "[t]he property in this case has been significantly altered and therefore the [c]ourt does not find that it fits within the language of 'such property' . . . as is required by Virginia Code § 33.2-1005(A)." The circuit court noted that that language "seem[ed] to intend that the property would be conveyed as the same piece of property that was originally acquired." The circuit court also held that it

> [did] not have the authority based on the appraisal to insert a purchase price of $286,110 where the wording used by the General Assembly is "original purchase price[.]" In this particular case where there has been such a substantial modification of the property, the Court finds Section B is the better statute.

3

The final order dismissed with prejudice Kalergis's "claims based on Virginia Code § 33.2-1005(A), but such dismissal is without prejudice as to any claim or cause of action based on Virginia Code § 33.2-1005(B) or other statutes."

This appeal followed.

## II.     ANALYSIS

"A [circuit] court's decision sustaining a demurrer presents a question of law which we review de novo.  Furthermore, like the [circuit] court, we are confined to those facts that are expressly alleged, impliedly alleged, and which can be inferred from the facts alleged." *Harris v. Kreutzer*, 271 Va. 188, 196, 624 S.E.2d 24, 28 (2006) (citation omitted).

Code § 33.2-1005(A) applies to what VDOT calls an "advanced acquisition."  An advanced acquisition occurs when the Commissioner purchases real property in anticipation of highway improvement.  If, after twenty years, the project has not commenced, VDOT is required to reconvey the property upon demand of the original property owner.  The relevant portion of Code § 33.2-1005(A) provides,

> that such property shall be reconveyed by the Commonwealth to such owner, or his heirs or assigns, upon repayment of the *original purchase price*, without interest.

(Emphasis added.)

"When the language of a statute is unambiguous, we are bound by the plain meaning of that language.  Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." *Payne v. Fairfax Cnty. Sch. Bd.*, 288 Va. 432, 436, 764 S.E.2d 40, 43 (2014) (citations omitted).

> The salutary function [of Code § 33.2-1005(A)] is to make certain that . . . property acquired by "advance acquisition" but not ultimately used for any public transportation project should be

4

> reconveyed to the original owner, provided the owner can be found and desires to recover it for the original purchase price.

*Commonwealth Transp. Comm'r v. Windsor Indus.*, 272 Va. 64, 82, 630 S.E.2d 514, 522 (2006) (addressing the 1997 amendment of Code § 33.1-90, precursor to Code § 33.2-1005(A)).

The issue raised under the facts of this case is at what price the 26.01 acres should be reconveyed to Kalergis. Kalergis argues that due to the removal of the Improvements from the Land, the circuit court should have looked to the appraisal that separately valued the Improvements ($863,890) and the Land ($286,110) to determine the reconveyance price of the Land. VDOT disagrees and asks the Court to determine that Code § 33.2-1005(A) limits repurchase options to the "original purchase price." A review of the record in this case shows the 1993 purchase price of $1,150,000 is listed in two documents. The first instance appears in VDOT's offer letter dated November 22, 1993, which states "[a]ccordingly, the following represents a summary of VDOT's offer to you: Land and Improvements $1,150,000." Second, the recorded deed reflects the conveyance of the 26.01 acres to VDOT for "the sum of $1,150,000."

"When the legislature has used words of a clear and definite meaning, the courts cannot place on them a construction that amounts to holding that the legislature did not intend what it actually has expressed." *Board of Supervisors of James City Cnty. v. Windmill Meadows, LLC*, 287 Va. 170, 180, 752 S.E.2d 837, 842 (2014) (citations and alteration omitted). "'[Courts] assume that the General Assembly chose, with care, the words it used in enacting the statute.'" *City of Richmond v. VEPCO*, 292 Va. 70, 75, 787 S.E.2d 161, 163 (2016) (citations omitted). If the General Assembly had intended for courts to use the "appraised value" instead of the "original purchase price," the legislature would have used that language in Code § 33.2-1005(A). "Appraised value" is not synonymous with "original purchase price." Indeed, when the General

5

Assembly means "appraisal," it says so. The General Assembly used the word "appraisal" throughout Title 25.1 (Eminent Domain) and Chapter 10 (Eminent Domain) of Title 33.2 (Highways and Other Surface Transportation Systems). When a government agency seeks to obtain property through eminent domain, the fair value of the property, to be given to the landowner as just compensation, is generally determined by an appraisal. Code § 25.1-417(A)(3) ("[T]he state agency shall establish an amount which it believes to be just compensation. . . . In no event shall such amount be less than the state agency's approved appraisal of the fair market value of such property, if such an appraisal is required."). "'*Appraisal*' means a written statement independently and impartially prepared by a qualified appraiser setting forth an opinion of defined value of an adequately described property as of a specific date, supported by the presentation and analysis of relevant market information." Code § 25.1-100. The General Assembly has made applicable the same eminent domain procedures when the Commissioner seeks to take property for transportation projects, allowing use of an "approved appraisal of the fair market value" as a way to determine the amount of the offer by the Commissioner. Code § 33.2-1001(C).

"Every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary." *VEPCO*, 292 Va. at 75, 787 S.E.2d at 164 (citations omitted). "[W]hen the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional." *Id*. (citations omitted). The use of the phrase "original purchase price" instead of "appraised value" in Code § 33.2-1005(A) must have significance. Clearly, when the General Assembly intends to use an appraisal as a benchmark, it knows how to do so. The fact that it did not in Code

6

§ 33.2-1005(A) indicates that it did not intend the property to be reconveyed at a price determined by the appraisal. "Original purchase price" clearly refers to the amount paid by VDOT to Kalergis when it took the 26.01 acres by advance acquisition.

The Court thus concludes that "original purchase price," as used in Code § 33.2-1005(A), is not ambiguous and, thus, this term must be construed by its plain meaning. The "original purchase price" in this case was $1,150,000. The circuit court did not err in finding that it could not insert the price of $286,110 from the appraisal where the language of the statute clearly says "original purchase price."

III.    CONCLUSION

For the foregoing reasons, the Court holds that an appraisal valuation is not synonymous with "original purchase price" as used in Code § 33.2-1005(A). The Court will affirm the judgment of the circuit court sustaining the Commissioner's demurrer.

*Affirmed.*