HERMITAGE METHODIST HOMES OF VIRGINIA, INC.

V.

DOMINION TRUST COMPANY, TRUSTEE, ETC., ET AL.

Record No. 881353

THE MILLER SCHOOL OF ALBEMARLE COUNTY

V.

DOMINION TRUST COMPANY, TRUSTEE, ETC., ET AL.

Record No. 881354

SEVEN HILLS SCHOOL INCORPORATED

V.

DOMINION TRUST COMPANY, TRUSTEE, ETC., ET AL.

Record No. 881390

January 12, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting and Lacy, JJ., and Harrison, Retired Justice

*R. Kenneth Wheeler (Francis M. Fenderson, Jr.; Thomas A. Cooper; Kane, Wheeler, Fenderson, Jeffries & Wolf,* on briefs), for appellant. (Record No. 881353)

*Judith B. Henry (Martin A. Donlan, Jr.; John William Crews; Crews & Hancock,* on brief), for appellee Prince Edward School Foundation. (Record No. 881353)

No briefs or arguments for appellees Dominion Trust Company, Trustee of the Testamentary Trust of Jack Adams, Deceased, The Miller School of Albemarle County, Seven Hills School Incorporated, Hampden-Sydney College and Mary Sue Terry, Attorney General of Virginia. (Record No. 881353)

*Thomas J. Michie, Jr. (James P. Cox, III; Michie, Hamlett, Lowry, Rasmussen & Tweel,* on brief), for appellant. (Record No. 881354)

*Judith B. Henry (Martin A. Donlan, Jr.; John William Crews; Crews & Hancock,* on brief), for appellee Prince Edward School Foundation. (Record No. 881354)

*R. Kenneth Wheeler (Francis M. Fenderson, Jr.; Thomas A. Cooper; Kane, Wheeler, Fenderson, Jeffries & Wolf,* on brief), for appellee Hermitage Methodist Homes of Virginia, Inc. (Record No. 881354)

No briefs or arguments for appellees Dominion Trust Company, Trustee of the Testamentary Trust of Jack Adams, Deceased, Seven Hills School Incorporated, Hampden-Sydney College and Mary Sue Terry, Attorney General of Virginia. (Record No. 881354)

*John T. Cook (Joseph C. Knakal, Jr.; Caskie & Frost*, on brief), for appellant. (Record No. 881390)

*Judith B. Henry (Martin A. Donlan, Jr.; John William Crews; Crews & Hancock*, on brief), for appellee Prince Edward School Foundation. (Record No. 881390)

*R. Kenneth Wheeler (Francis M. Fenderson, Jr.; Thomas A. Cooper; Kane, Wheeler, Fenderson, Jeffries & Wolf*, on brief), for appellee Hermitage Methodist Homes of Virginia, Inc. (Record No. 881390)

No briefs or arguments for appellees Dominion Trust Company, Trustee of the Testamentary Trust of Jack Adams, Deceased, Hampden-Sydney College, The Miller School of Albemarle County, and Mary Sue Terry, Attorney General of Virginia. (Record No. 881390)

Justice Compton delivered the opinion of the Court.

We consolidated three appeals arising from a single suit brought by the trustee of a charitable, testamentary trust. The trustee sought the trial court's aid and guidance in administration of the trust and in construction of certain racially discriminatory trust provisions applicable to private educational institutions. The provisions allegedly are unconstitutional and unenforceable.

In 1956, Jack Adams, a resident of Lynchburg, executed his will establishing the trust in question. In 1964, the testator executed a codicil to the will. In 1968, Adams died testate. The will and codicil, drafted by a Lynchburg attorney, were duly probated.

Article IV of the codicil provides that the residuum of Adams' estate be held in trust and the income therefrom be distributed pursuant to clause (a). The clause provides, in part:

"So long as Prince Edward School Foundation, Prince Edward Co., Va., admits to any school, operated or supported by it, only members of the White Race . . . my said Trustee shall pay the net income . . . to the Trustees (or other governing body) of such Foundation, to be expended by them . . . for the benefit of any of said schools."

The clause further provides:

"In the event that the said Foundation should cease to operate for one year, or should at any time permit to matriculate

in any of the schools operated or supported by it any person who is not a member of the White Race, no further payment of income shall be made to the said Foundation; but all income accruing after such date shall be paid to the Trustees of the Miller School, situated in Albemarle County, . . . so long as said School admits only members of the White Race; said income shall be expended by such Trustees . . . for the payment of the expenses of maintaining and operating said School . . . ."

The clause further provides for successive gifts over first to Seven Hills School, Inc., located in Lynchburg, and then to Hampden-Sydney College, in the event of the occurrence of the same contingencies. The final beneficiary of the successive gifts over is Hermitage Methodist Homes of Virginia, Inc., without the limitation of the described contingencies.

Code § 55-26 (Repl. Vol. 1974) was effective when the will and codicil were executed, and at the time of the testator's death. It provided, as pertinent:

"Every gift, grant, devise or bequest which, since April second, eighteen hundred and thirty-nine, has been or at any time hereafter shall be made for literary purposes or for the education of white persons, and every gift, grant, devise or bequest which, since April tenth, eighteen hundred and sixty-five, has been or at any time hereafter shall be made for literary purposes or for the education of colored persons, and every gift, grant, devise or bequest made hereafter for charitable purposes, whether made in any case to a body corporate or unincorporated, or to a natural person, shall be as valid as if made to or for the benefit of a certain natural person, . . . ."

In *Triplett* v. *Trotter*, 169 Va. 440, 193 S.E. 514 (1937), this Court construed the statute as validating a charitable gift for the education of members from one of the two races, but not from both. *Id.* at 445, 193 S.E. at 516.

In 1975, the General Assembly repealed § 55-26. Acts 1975, ch. 547. In the next year, the legislature enacted the substance of former § 55-26 without the discriminatory provisions as present Code § 55-26.1. Acts 1976, ch. 546.

In 1987, appellee Dominion Trust Company filed the present suit naming as parties defendant the income beneficiaries and the Attorney General of Virginia. Asserting that it was the successor trustee of the Adams Trust, the trustee alleged that it had paid over the income to Prince Edward School Foundation since the creation of the trust. It stated that "a determinable event" as described in Article IV may have occurred with respect to the school administered by the Foundation. (Counsel represented at the bar of this Court that subsequent to creation of the trust each educational beneficiary had enrolled black students in its schools.)

The trustee sought advice and guidance on "whether the determinative event or contingency [was] legal, valid and enforceable." Therefore, the trustee asserted, it was "uncertain as to the proper income beneficiary of said trust" and asked the court to construe and interpret the will to determine the rights of the parties.

In its answer, Prince Edward, stating that it does not discriminate in the admission of students to the school, asserted that the discriminatory provisions of Article IV of the will "are illegal, invalid and unenforceable," and that the proper interpretation of the disputed provisions requires "the continued payment of the trust income to the Prince Edward School Foundation without interruption or diminution." Prince Edward asserted that the "racially discriminatory provisions of Article IV are unconstitutional under Article I, § 11 of the Constitution of Virginia and the Fourteenth Amendment of the Constitution of the United States."

In its answer, the Miller School likewise asserted that the trust provisions under Article IV are discriminatory and unconstitutional. It further asserted that since "the precise object of the trust fails because of the trust's illegality," it should be entitled to all the income from the trust under the doctrine of *cy pres* because the testator's "primary charitable intent" was to benefit the Miller School.

In its answer, Seven Hills School also asserted that the trust provisions are unconstitutional and also asked the court to apply the *cy pres* doctrine to find that it "should be entitled to all or such portion of the income from said trust as may be determined proper without enforcing the illegal racially discriminatory provisions thereof."

In its answer, Hampden-Sydney College, asserting that it has accepted students "without regard to race, color, creed or religion," asked the court to construe and interpret the will, and to

award it all sums to which it may be entitled under the will and trust.

In its answer, the Hermitage Methodist Homes of Virginia, Inc., asked the court to construe the will and trust, stating that it employs no racially discriminatory conditions upon the admission of persons into its homes for the aging and that it would "accept all sums which may be due it under the will and trust," if the court found it so entitled.

In her answer, the Attorney General joined in the request for interpretation of the documents. Also, she asked that "no action be taken which is adverse to the public's interest in charitable trusts."

Additionally, Prince Edward filed a motion for summary judgment. It asserted that absent a statute, the common law of Virginia does not recognize the validity of a charitable trust like the one in issue here. It asserted that former Code § 55-26 "was the sole statutory basis for the creation of a trust for educational purposes with a corporate beneficiary." Further, Prince Edward alleged the discriminatory provisions of Adams' will, as amended by the codicil, were necessary to make a valid bequest under Code § 55-26. Thus, according to Prince Edward, the discrimination compelled by the Commonwealth through the statute violated the rights of Prince Edward and its students to equal protection of the laws under the Fourteenth Amendment.

Further, Prince Edward alleged that neither the trustee, the court, nor the Attorney General can compel or effect a divestiture of it as beneficiary of the trust because such action would be unconstitutional by "giving continuing effect to the unconstitutional discriminatory requirements" of repealed § 55-26. Thus, Prince Edward asked the court to strike the discriminatory language from the will, give effect to the primary charitable intent of the testator to promote the education of children by the Prince Edward School Foundation, and order the trustee to pay it all trust income.

Hermitage also filed a motion for summary judgment. It asserted that the trust is valid and that the language should be given its plain meaning to carry out the testator's intent. When this is done, according to Hermitage, a "determinable event has occurred with regard to each" other income beneficiary, resulting in the final beneficiary, Hermitage, "being entitled under the terms of the

trust to receive all future trust income payments as they become due."

Upon consideration of the argument of counsel on the motions for summary judgment, the trial court, in a letter opinion, granted Prince Edward's motion and denied Hermitage's motion. The court found, "All racially discriminatory conditions of the Trust are unconstitutional and void." The court further determined that Prince Edward "shall continue as the principal and sole beneficiary of the Trust, as long as the school remains in operation."

The court also ruled that if Prince Edward ceases operation for one year, all income accruing after such date shall be paid to Miller School. The court pointed out that the trust named three more successive, but not joint, beneficiaries "each of whom may become the principal and sole beneficiary of the Trust in the event that all prior beneficiaries named, in the order set forth, cease to operate." The court said, "This construction gives full recognition to the intent of the testator in naming successive beneficiaries." Finally, the court ruled that the *cy pres* doctrine was inapplicable.

From the September 1988 final decree incorporating those rulings, we awarded separate appeals to Hermitage, Miller School and Seven Hills School. The trustee, Hampden-Sydney College, and the Attorney General did not participate in the appeals.

Hermitage assigns error to the trial court's rulings that the conditions of the trust are unconstitutional and void, and that Prince Edward shall continue as the sole beneficiary of the trust as long as the school operates. Seven Hills School and Miller School assign error to the trial court's ruling granting Prince Edward's motion for summary judgment and its decision that *cy pres* is not applicable.

These assignments of error present the following issues on appeal. First, are the discriminatory provisions of Article IV valid, or are they unconstitutional and invalid? Second, if such provisions are invalid, is the primary educational bequest of the trust nevertheless valid, or must it fail, requiring future income to be paid to Hermitage? And, third, if the provisions are invalid, is the doctrine of *cy pres* applicable?

On the first question, Seven Hills School and Miller School adopt the trial court's ruling that the racially discriminatory conditions of the trust established in Adams' will are unconstitutional under both the federal and Virginia constitutions. The constitutional argument is articulated by Prince Edward as follows. The

Fourteenth Amendment to the United States Constitution prohibits a state from denying any person within its jurisdiction the equal protection of the laws. Article I, § 11, of the Constitution of Virginia provides "that the right to be free from any governmental discrimination upon the basis of . . . race [or] color, . . . shall not be abridged. . . ." Thus, the argument goes, all persons in Virginia, including the students and prospective students of the educational institutions named as beneficiaries of the Adams Trust, have a constitutional right to be free from state-compelled racial discrimination.

The argument continues that the Supreme Court of the United States has established a clear distinction between deprivation by the state, so-called "state action," and purely private conduct against which the Fourteenth Amendment affords no protection. *See e.g.*, *Jackson* v. *Metropolitan Edison Co.*, 419 U.S. 345, 349 (1974). Here, the racially discriminatory conditions of the trust are unconstitutional because they are compelled by state law, specifically by repealed Code § 55-26. As interpreted in *Triplett* v. *Trotter*, *supra*, for an educational trust to be valid in Virginia, the statute required the beneficiary school to admit students from one of the two races, but not from both.

Accordingly, the argument goes, "the ability of Mr. Adams to create this educational trust had its sole source in a state law which required him to discriminate on the basis of race in order to give effect to his intent to further education." The argument points out that while § 55-26 required discrimination with respect to educational trusts, it did not impose such a requirement with respect to general charitable gifts, such as the gift over to Hermitage.

On the other hand, Hermitage contends that the application of the restrictive provisions of the trust would not constitute a deprivation of any constitutionally protected right. It argues that the provisions were not the result of any "state action," or state-compelled conduct, but were motivated by the testator's own social philosophy, regardless of any statute.

■ Because of the view we take of the second issue, based on principles of real property law, we will agree with Prince Edward, Seven Hills School, and the Miller School on the first issue for purposes of this decision. Whether the discriminatory provisions are valid or void, the result is the same, as we will demonstrate below. Thus, we will assume, without deciding, that the trial court

correctly ruled that the racially discriminatory provisions are unconstitutional and void. This brings us to the second issue, that is, whether the educational trust is otherwise valid.

Asserting that the restrictive language provides for an illegal condition subsequent, Prince Edward relies on *Meek* v. *Fox*, 118 Va. 774, 88 S.E. 161 (1916), to sustain the trial court's ruling that the racially discriminatory condition is void, but the gift is valid.

The issue presented in *Meek* involved the proper construction of a will regarding the testator's devise to his daughter, Julia Anne. In the will, the testator devised one-third of his land to his son in fee simple. To Eliza, his only married daughter, he devised one-third of his land during her life, remainder to her heirs. The testator made the following provision for Julia Anne: "Also to my daughter, Julia Anne, I desire that she shall have her equal share laid off, also according to quality and quantity, and she shall have it forever, except she should marry, then at her death I desire that it shall revert to her legal heirs."

After the testator's death, Julia Anne married. Later, she conveyed the land devised by the above clause to one Fox and another. After Julia Anne's marriage, her brother conveyed his land to one Meek, and included in his conveyance what he claimed to be his remainder in the land devised to his sister, Julia Anne, by the foregoing clause of the will.

In the ensuing litigation brought to remove a cloud upon the title to the land devised to Julia Anne, the appellant claimed the land under the conveyance to Meek while the appellees claimed under Julia Anne. The appellees contended that a fee simple estate vested in Julia Anne under the will; that the provision in the will created a condition subsequent in general restraint on marriage; that the condition was void as against public policy; and that the subsequent marriage of Julia Anne did not divest her of the fee simple estate, but the same continued in her and was passed from her by the conveyance to Fox.

This Court agreed with the appellees and held that the devise to Julia Anne, "and she shall have it forever," transferred to her upon the testator's death a fee simple estate in the land. The Court further held that the added provision of the devise, "except she should marry, then at her death I desire that it revert to her legal heirs," was a condition subsequent and was in restraint of marriage, and void. Therefore, the Court struck the condition,

"and the estate thus became absolute and free from condition." *Id*. at 779, 88 S.E. at 162.

Drawing on the rationale of *Meek*, Prince Edward contends that because the discriminatory condition is void, its "interest in the income from the Trust remains vested" and "a subsequent beneficiary's interest will vest only in the event that Prince Edward ceases operation of a school." We disagree.

■ The principle of striking the offending condition subsequent and thereby creating an absolute estate, as applied in *Meek*, does not control this case because the provision at issue here is not a condition subsequent. Rather, this provision is a special limitation. Further, the estate in personalty created here is defeasible subject to an executory limitation. *See Daniel* v. *Lipscomb*, 110 Va. 563, 566-67, 66 S.E. 850, 851-52 (1910) (estate was a fee subject to executory limitation and not determinable fee because future interest was created in third person following defeasible fee, and not possibility of reverter in grantor or his heirs).

■ Professor Minor explains that "special limitations are created by such words as 'while,' 'during,' 'as long as,' 'until,' etc. Thus, a grant to A *until* Z returns from abroad; to a woman *while* she remains a widow, or *during* widowhood . . . , to D and his heirs *as long as* Y has heirs of his body . . . , all these are special limitations and not conditions subsequent." 1 *Minor on Real Property* § 525 at 690 (Ribble ed. 1928). "Limitations differ from conditions subsequent in this: A limitation marks the *utmost time of continuance* of an estate; a condition marks some event, which, if it happens in the course of that time, is to *defeat the estate*." *Id., quoted in Meek*, 118 Va. at 778, 88 S.E. at 162.

■ In the granting clauses of Adams' will, he repeatedly specified that each educational beneficiary's right to receive income extended only "so long as" the beneficiary complied with the restrictive provision. But, if an educational beneficiary violated the restrictive provision by the matriculation of a black student, that beneficiary's interest would terminate, and the gift would devolve to successive educational beneficiaries who had not violated the provision. Further, Adams makes his intent clear in clause (b) that the creation of the educational beneficiaries' rights to receive income "shall be determinable" upon the happening of the contingency and that "all rights" of those institutions, successively to receive income from the trust "shall automatically terminate." Clearly this is language of limitation and not condition.

*Meek* makes clear that if the provision in that case had been a limitation, although equally offensive to the public policy against restraints on marriage, the Court could not have found it void. "Hence, while an estate limited 'to A in fee, but if he attempts to alien his estate then to B in fee,' would give A an absolute estate and in fee, free from condition, because the condition is an unreasonable restraint of alienation and void, yet a limitation 'to A until he attempts to alien, and then to B,' would be a perfectly good limitation, and upon A's attempt his estate would cease and go over to B." 118 Va. at 779-80, 88 S.E. at 162-63. Although it did not address the issue of what happens when a gift subject to a special limitation offends constitutional considerations, the essential nature of a limitation as described by the Court in *Meek* points to the decision of the issue in this case.

In the words of Minor, a limitation marks the utmost time of continuance of the estate. And, a limitation cannot be altered to extend "beyond that period without violating the terms of the devise." *Id.* at 779, 88 S.E. at 162. If a condition subsequent is unlawful, a court can merely excise the offending language and leave the remaining estate intact. But, where a gift or estate subject to a limitation is unlawful, in order to cure the defect the court must terminate the entire gift or estate.

Therefore, unlike in *Meek*, the interests of the educational charities fail completely. And, this is not because we give effect to an invalid trust provision. Rather, we strike the entire gift to Prince Edward and the gifts to the other educational beneficiaries because the offending language cannot be stricken from the provision without changing the essential nature and quality of the estate. *See Evans* v. *Abney*, 396 U.S. 435, 444-45 (1970).

It necessarily follows from the foregoing that, while the gifts to all the beneficiaries of Adams' charitable educational trust must fail, the executory interest of Hermitage survives. Adams did not place any unconstitutional limitations upon Hermitage's interest. And, as all prior estates have been declared invalid, Hermitage has the only valid, remaining interest. The trial court erred in holding to the contrary.

Because we find that the provision is a limitation, the same final result would be reached if we found that the trust's provisions were constitutional, as we have said earlier. By the natural operation of this limitation, if it were valid, upon the matriculation of a black student into Prince Edward, the school's interest

terminated. And, because as counsel have represented, the educational institutions have all admitted black students, their respective interests in the trust proceeds can never vest into possession. Hermitage would be the ultimate beneficiary since no limitations are placed on its interest.

Finally, we reject the contentions of Seven Hills School and Miller School that, once the restrictive provisions are declared invalid the *cy pres* doctrine should be applied and evidence taken to determine the testator's intent in view of the changed circumstances.

 The doctrine is codified in Code § 55-31, which provides, as relevant:

> "When any . . . person gives, bequeaths, . . . any . . . property in trust to or for any educational, charitable or eleemosynary purpose, the indefiniteness or uncertainty of the beneficiaries named in any instrument creating such a gift, bequest . . . or the indefiniteness of the purpose of the trust itself, shall not defeat any such trust and, . . . it shall be administered to conform as near as may be to the purpose for which created or, if impossible of performance for this purpose, for some other educational, charitable, benevolent or eleemosynary purpose . . . ."

Here, there is no indefiniteness or uncertainty regarding the beneficiaries or purpose of the trust. Moreover, there is a valid gift over to Hermitage, as we have said, and this eliminates any need for the court to search for the testator's intent. Under these circumstances, it would be inappropriate to look beyond the four corners of the testamentary documents.

For these reasons, we will affirm the trial court's ruling that *cy pres* is inapplicable. We will reverse the ruling that the trust income will be paid to Prince Edward. Instead, we will enter final judgment here ordering the trustee to pay all retained trust income and future trust income to Hermitage.

Thus, the final decree of the trial court will be

*Affirmed in part, reversed in part, and final judgment.*