PRESENT:  All the Justices

EDWARD L. HAMM, JR.

                                                OPINION BY

v.  Record No. 151158                      JUSTICE D. ARTHUR KELSEY
                                                June 23, 2016

CHARLES W. HAZELWOOD, JR.,
ADMINISTRATOR DBN FOR THE
ESTATE OF MELBA BIGELOW CLARKE,
DECEASED, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Grace Burke Carroll, Judge

The circuit court declared void a provision in a real property deed that sought to create a contingent reversionary interest in the grantor and her heirs.  The beneficiary of that interest, Edward L. Hamm, Jr., argues on appeal that the provision, known as a possibility of reverter at common law, lawfully vested him with the reversionary interest.  We agree and, thus, reverse the court's holding to the contrary.

I.

In 1989, Dorothy Bigelow Hamm executed and recorded a deed of gift transferring her one-half interest in a parcel of property to her sister, Melba Bigelow Clarke.[1]  Dorothy's husband joined in the conveyance.  The deed of gift reserved a life estate for Dorothy for the duration of her life.  She died in 2004, thereby extinguishing the life estate.  In her will, Dorothy left any interest she had in the property to her son, Edward.  Melba had children, including a son, Reginald Wayne Clarke, at the time of Dorothy's deed of gift.  In the deed of gift, Dorothy included a provision that specifically mentioned Reginald:

> The PROPERTY hereby conveyed shall AUTOMATICALLY
> REVERT to Dorothy Bigelow Hamm, one of the parties of the first

---

[1] This case involves several individuals with the same last names.  For the sake of clarity, and despite the informality of doing so, we will identify individuals in full and thereafter refer to them only by their first names.

part, in the event Reginald Wayne Clarke, son of the party of the
second part, ever acquires any interest therein by grant, inheritance
or otherwise or is otherwise permitted to occupy, even temporarily,
any portion of said property.

J.A. at 7.[2] Nothing in the record explains Dorothy's reasons for including this provision in the deed.

Melba died intestate in 2012, eight years after her sister.[3] Melba's heirs included six children, including Reginald, and her three grandchildren. The administrator of Melba's estate, Charles W. Hazelwood, Jr., filed a petition for aid and direction seeking a judicial order declaring that the possibility-of-reverter provision in the deed was void as an impermissible restraint on alienation. Edward countered that the provision was a lawful possibility of reverter limited in scope and in time to the life of a single person, Reginald. Id. at 54-55. Rejecting Edward's view, the circuit court held that "the possibility of reverter contained in the Deed of Gift is void and unenforceable under Virginia law" and, thus, would be "hereby stricken from the conveyance." Id. at 34.

---

[2] The only condition subsequent upon which Edward relied in the circuit court was the portion of the possibility-of-reverter clause forbidding Reginald from "ever acquir[ing] any interest" in the property. J.A. at 7; see also id. at 13-14. We limit our analysis, therefore, to this aspect of the clause and offer no opinion on the enforceability of the additional condition forbidding Reginald from being "permitted to occupy, even temporarily, any portion of said property." Id. at 7.

[3] Shortly after Melba's death, Reginald admitted a will to probate. See id. at 27-28. Two of his siblings filed suit to challenge the will proffered by Reginald, claiming it was not in fact their mother's last will and testament. In a consent order, the circuit court vacated its earlier order admitting the will to probate. Id.

Deeming the proffered will to have "no force and effect whatsoever," the court vacated an order appointing another son of Melba, Victor Dale Clarke, as administrator and appointed Charles Hazelwood, an "independent third-party," to serve as an administrator d.b.n. of Melba's estate. Id.; see Black's Law Dictionary 54 (10th ed. 2014) (defining "administrator de bonis non" as one "appointed by the court to settle the remainder of an intestate estate not settled by an earlier administrator or executor").

2

II.

On appeal, Edward argues that nothing in either Virginia law or any background principle of English common law forbids a landowner from conveying property subject to this type of contingent reversionary interest. We agree.

A.

The first premise of property law is that a lawful owner, as a general rule, has the power to convey his real property to whomever he wishes under whatever conditions they agree to. "The exclusive right of using and transferring property," Chancellor Kent explained, "follows as a natural consequence, from the perception and admission of the right itself." 2 James Kent, Commentaries on American Law 257-58 (1827). At common law, a lawful owner's right to property "consists in the free use, enjoyment, and disposal of all his acquisitions, without any control or diminution, save only by the laws of the land." 1 William Blackstone, Commentaries *138; see Restatement (Second) of Property: Donative Transfers div. 1, pt. 2, intro. note (1992) ("The power of the current holder of property to alienate cannot be plenary unless he can hamper the power of future holders to alienate it, either directly or indirectly.").

When a deed of conveyance uses no "words of limitation," Virginia law treats it as a transfer of a fee simple interest "unless a contrary intention shall appear." Code § 55-11. Such "contrary intention," id., could include an express reservation of a contingent reversionary interest. The grantor's right to impose such a condition, however, is not absolute. Centuries of common-law jurisprudence have marked off the legal boundaries of this presumptive right.

Perhaps the best-known boundary is the historic maxim against unreasonable restraints on alienation. In the late 1400s, Judge Littleton declared void as "against reason" conveyance conditions that denied a grantee the power to "alien" the property conveyed "to any person."

3

Thomas Littleton, Littleton's Tenures, § 360 (Eugene Wambaugh ed., 1903). Lord Coke confirmed this view, stating that under English common law such conditions are "repugnant and against law." Coke upon Littleton § 206b (Thomas Coventry ed., 1830); see also id. § 223a (noting that if a condition "ousts not the feoffee of his power to alien the land whereof the feoffment is made . . . there is no repugnancy to the estate").

This prohibition, however, did not apply to a condition against alienating to a particular person, "naming his name, or to any of his heirs, or of the issues" of such person, because such a condition "do[es] not take away *all* power of alienation from the feoffee." Id. (emphasis added). "Similar statements may be found in Year Book cases dating from the 15th century." Restatement (Second) of Property: Donative Transfers div. 1, pt. 2, intro. note (citing J. Gray, Restraints on Alienation § 18 (2d ed. 1895)).

Most modern courts continue to hold to the ancient view that "a condition in restraint of alienation general as to time and person is void." 3 Thompson on Real Property § 29.05, at 793 (David Thomas ed., 3d ed. 2012); see also 10 Powell on Real Property § 77.02, at 77-7 (Michael Wolf ed., 2016); 1 Raleigh C. Minor, The Law of Real Property § 579, at 658-59 (1908). We, too, follow this common-law principle and have applied it in various contexts. See, e.g., Edwards v. Bradley, 227 Va. 224, 228, 315 S.E.2d 196, 198 (1984) ("[A] condition totally prohibiting the alienation of a vested fee simple estate or requiring a forfeiture upon alienation is void.").[4]

_____

[4] See also Carson v. Simmons, 198 Va. 854, 858, 96 S.E.2d 800, 803 (1957) (noting the "well known doctrine" that "neither a testator in a will nor a grantor in a deed" could give a fee simple "and endeavor to impose upon the donee any condition incompatible with the usual and necessary incidents accompanying a fee simple estate," including "the complete right of alienation, without let or hindrance" (citation omitted)); Carneal v. Kendig, 196 Va. 605, 609, 85 S.E.2d 235, 237 (1955) ("[A] condition against all alienation is void, because repugnant to the

We are unaware of precedent, however, holding that all lesser forms of restraint — no matter their scope or duration — are per se repugnant. To the contrary, courts generally uphold conditions that affect later alienation rights if, "under all the circumstances of the case, the restraint is found to be reasonable." Restatement (Second) of Prop.: Donative Transfers § 4.2;[5] see also 4 Restatement (First) of Property § 406 (1944); accord Carneal v. Kendig, 196 Va. 605, 609-10, 85 S.E.2d 235, 237 (1955) ("It is frequently said that a reasonable restraint on alienation is valid." (quoting 1 Raleigh C. Minor & Frederick D.G. Ribble, The Law of Real Property § 555, at 723 (2d ed. 1928))).[6]

Among the circumstances determining reasonableness is whether the restraint on alienation is "limited in duration" and "limited as to the number of persons to whom transfer is prohibited." Restatement (Second) of Property: Donative Transfers § 4.2. The power of alienation, as a general rule, "may be restricted to a limited extent; for instance, as to certain designated persons, or, it is said, for a reasonable time (though the latter proposition is disputed by some)." Camp v. Cleary, 76 Va. 140, 143 (1882) (citation omitted).

B.

The administrator contends the contested provision in Dorothy's deed of gift should be analogized to a will provision we rejected in Dunlop v. Dunlop's Ex'rs, 144 Va. 297, 132 S.E. 351 (1926). In that case, we held that there was "no question" the will devised an "absolute fee simple" interest in real property to the testator's son, "vesting in him complete ownership." Id.

---

estate devised." (citation omitted)); Camp v. Cleary, 76 Va. 140, 143 (1882) ("[A]n absolute and unqualified restraint as to estates generally, whether legal or equitable, is inadmissible.").

[5] This reasonableness principle, "to the extent that [it] permit[s] restraints on alienation, [is] equally permissive in regard to non-donative transfers." Restatement (Second) of Property: Donative Transfers div. 1, pt. 2, intro. note.

[6] See also 2 John B. Minor, Institutes of Common and Statute Law 250 (2d ed. 1877); Coke upon Littleton § 223a-b.

at 303, 132 S.E. at 352-53. Another provision of the will stated that if the son sold the father's business as an entirety (which included all of the inherited property), the son would forfeit three-fourths of his inheritance. Id. at 304, 132 S.E. at 353. The forfeiture provision thus punished the son if he sold the inherited property to anyone at any time.

For several reasons, we find the analogy to Dunlop unpersuasive.

## 1.

Dorothy's deed of gift did not — like the will in Dunlop — clearly convey an "absolute fee simple" interest in real property to Melba, thereby "vesting in [her] complete ownership." Id. at 303, 132 S.E. at 353. The conveyance clause in the deed of gift nowhere mentioned "absolute fee simple," id., the traditional phrase "to A and his heirs," or any other "words importing that [the grantee] is given the absolute title," Southworth v. Sullivan, 162 Va. 325, 332, 173 S.E. 524, 526 (1934). In real property law, such descriptions are foundational in determining the grantor's intent to convey fee simple absolute title. See generally 9 Thompson, supra, § 82.13(a)(4), at 704-05.

Instead, the conveyance clause said only that Melba received the property "as and for her sole and separate equitable estate." J.A. at 6. The subsequent habendum clause clarified this phrase, stating that Melba was "TO HAVE AND TO HOLD" the property "for her sole and separate equitable estate, free from the control and marital rights of her present or any future husband and free from any curtesy rights or inchoate curtesy rights of the present husband or any future husband." Id. at 8. Melba was to have "full right and complete authority . . . to alien, convey, encumber . . . without necessity of joinder by or with her husband." Id.

These provisions make clear that the conveyance was to be free of any claim of right, including dower rights, from Melba's husband — which were standard provisions in some deeds

6

prior to the statutory abolishment of dower and curtesy interests in 1991. See Code § 64.2-301

(abolishing dower and curtesy interests vested after January 1, 1991). But these provisions,

whether read separately or together, do not purport to make the conveyance a wholly

unconditional transfer of a fee simple absolute. Nor do these clauses directly or indirectly

contradict the possibility-of-reverter provision in the deed of gift declaring that the "PROPERTY

hereby conveyed shall AUTOMATICALLY REVERT" upon the happening of the condition

subsequent. J.A. at 7.

In Virginia, "all rules of construction have but one object, and that is to ascertain the

intent of the parties to the instrument to be construed, and that intent when ascertained, if it

controverts no rule of law or of public policy, becomes the law of the case, and full effect must

be given to it." Morris v. Bernard, 114 Va. 630, 634, 77 S.E. 458, 460 (1913). From this

perspective, all clauses of Dorothy's deed of gift point to a single conclusion: She intended to

convey a fee simple defeasible upon a condition subsequent not a fee simple absolute.[7]

2.

Dorothy's deed of gift also did not — like the will in Dunlop — impose a restriction on

alienability with an *unlimited* scope and duration. The will provision in Dunlop punished the son

if he sold the property to anyone at any time. It was a classic example of "a condition in restraint

of alienation general as to time and person" and thus "void." 3 Thompson, supra, § 29.05, at

793. The condition was not reasonably limited in time and scope. See Camp 76 Va. at 143; cf.

Carneal, 196 Va. at 609-10, 85 S.E.2d at 237-38.

_____

[7] "The modern estate in fee simple can be either an estate in fee simple absolute or an estate in fee simple defeasible. When it is defeasible, it can end by virtue of a special limitation, a condition subsequent, or an executory limitation." 1 Powell, supra, § 13.02, at 13-9 (footnotes omitted) (citing 1 Restatement (First) of Property §§ 14-16 (1936)); see, e.g., Hermitage Methodist Homes of Va., Inc. v. Dominion Tr. Co., 239 Va. 46, 55-56, 387 S.E.2d 740, 745 (1990).

In our opinion, the contested provision in Dorothy's deed of gift was reasonably limited in duration and scope. It was directed at a single individual, Reginald, for the limited period of his life.[8] It was thus wholly unlike the forfeiture provision in Dunlop, which sought to forever restrain the son from selling the property to anyone for any reason. Unlike the Dunlop restriction, therefore, the contested provision in Dorothy's deed of gift was not the kind of restraint "general as to time and person" that courts historically have deemed unenforceable. 3 Thompson, supra, § 29.05, at 793.

### 3.

Finally, the contested provision in Dorothy's deed of gift (unlike the failed provision in the Dunlop will) is best understood not as an overreaching restraint on alienation but rather as a mere possibility of reverter.[9]

At common law, reversionary interests were classified as either a reversion or a possibility of reverter. See generally Minor, supra, § 807, at 893-94; 1 Herbert T. Tiffany, The Law of Real Property §§ 113, 116, at 269-73 (1903). A "true reversion" is a "vested estate *in praesenti*, with enjoyment *in futuro*." Scott County Sch. Bd. v. Dowell, 190 Va. 676, 686, 58 S.E.2d 38, 43 (1950). In this respect, "[a] reversion is the remnant of an estate *continuing in the grantor*, undisposed of, after the grant of a part of his interest." Copenhaver v. Pendleton, 155

---

[8] The rule against perpetuities is not at issue in this case because possibilities of reverter are excluded from the rule against perpetuities as "[a] property interest . . . that was not subject to the common-law rule against perpetuities." Code § 55-12.4(A)(7); see Scott County Sch. Bd. v. Dowell, 190 Va. 676, 688, 58 S.E.2d 38, 43-44 (1950) ("At common law the possibility of reverter was not an estate subject to grant" and, as such, "was not void as violative of the rule against perpetuities.").

[9] See generally 3 Thompson, supra, § 24.02, at 455-57 ("The interest that remains in a grantor, testator or settlor of a trust after creating a fee simple determinable is called a possibility of reverter. . . . The 'possibility of reverter' is created by the conveyance of a limited fee."); 1 Restatement (First) of Property § 154 cmt. g ("When the owner of an estate in fee simple absolute transfers an estate in fee simple determinable, the transferor has a possibility of reverter.").

Va. 463, 477, 155 S.E. 802, 806 (1930) (citation omitted).  Reversions, therefore, are "always

*vested* estates," not contingent or conditional future interests.  Id. (citation omitted).

In contrast, a "possibility of reverter" is a future interest that is "always contingent and

corresponds to a contingent limitation."  Id. at 478, 155 S.E. at 806 (citation omitted); see also

Pence v. Tidewater Townsite Corp., 127 Va. 447, 451, 103 S.E. 694, 695 (1920).  In this respect,

a "possibility of reverter" at common law is "not an estate, present or future, but a possibility of

having an estate."  Commonwealth Transp. Comm'r v. Windsor Indus., 272 Va. 64, 78, 630

S.E.2d 514, 520 (2006) (citation omitted).  Even so, "[w]hile a possibility of reverter is not a

vested interest in real property, it is a property interest."  Id. at 84, 630 S.E.2d at 523.

Consequently, it is a "right inheritable at common law" and by statute "may be transmitted also

by deed or will."  Sanford v. Sims, 192 Va. 644, 648, 66 S.E.2d 495, 497 (1951) (citing Code

§ 55-6).

In Dorothy's deed of gift, the disputed provision stated that the fee conveyed "shall

AUTOMATICALLY REVERT" to the grantor if Reginald, among other things, "ever acquire[d]

*any* interest" in the property.  J.A. at 7 (emphasis added).[10]  This language created a possibility

of reverter in Dorothy and her heirs upon the happening of the condition subsequent.  It is true

that the provision had the practical effect of precluding Melba or her successors in interest from

ever selling or devising the property to Reginald, for the very act of doing so would trigger the

reversionary condition.  It is also true that "[c]onditions subsequent, because they tend to destroy

estates, are not favored in law, and when effective to work a forfeiture of title they must have

---

[10] The record says nothing about Dorothy's reason for including this provision, and thus, we have no factual basis for speculating about her subjective motivations.  Though we are skeptical that subjective motivations should play any role in the reasonableness determination, contra Casey v. Casey, 700 S.W.2d 46, 49 (Ark. 1985), we have no occasion in this case to rule on this question.

been created by express terms or clear implication." Pence, 127 Va. at 451, 103 S.E. at 695; accord Eagler v. Little, 217 Va. 869, 872, 234 S.E.2d 242, 244 (1977).

That said, "the converse proposition is equally well settled. If it is the clearly expressed intention of the parties to create an estate upon a condition subsequent, the courts must give effect to such intention." Pence, 127 Va. at 451, 103 S.E. at 695. In this case, Dorothy very clearly expressed her intention that the conveyance would revert if Reginald ever acquired any interest in the property.[11] We know of no rule of law or equity that forbade Dorothy from making her conveyance subject to that condition or which authorizes us to declare it void. For this reason, the circuit court erred in declaring the possibility-of-reverter provision to be void.[12]

---

[11] For this reason, we find no merit in the administrator's reliance on Moore v. Holbrook, 175 Va. 471, 476, 9 S.E.2d 447, 450 (1940), which found a limiting condition to be "ambiguous" and thus insufficiently "clear and decisive" to reduce the otherwise unlimited scope of a devising clause of a will. "If a prior estate in fee is to be cut down to a life estate or taken away altogether by subsequent language it must be by express words or by compelling implication. It cannot be done by ambiguous or doubtful language." Id. Here, the possibility-of-reverter clause in Dorothy's 1989 deed of gift uses neither "ambiguous [n]or doubtful language." Id.

[12] Some authorities distinguish between possibilities of reverter that create only "a contingent right of re-entry upon condition broken" and those that do not require re-entry for the reversion to take place. Sanford, 192 Va. at 648, 66 S.E.2d at 497 (citation omitted). In the former category, "the original grantor, or its successor, was required to make 'entry, or its equivalent' to exercise the right to reconveyance." Windsor Indus., 272 Va. at 80, 630 S.E.2d at 521. In some cases, that can be a crucial distinction. "Where there is a breach of a condition subsequent upon which the possibility of reverter depends, the estate vested in the grantee does not cease in him and revest ipso facto in the grantor or his successors;" rather, the estate "remains unimpaired in the grantee or his successors until entry, or its equivalent, by the grantor or his successors." Sanford, 192 Va. at 649, 66 S.E.2d at 497. Thus, "the right to enforce the forfeiture may be waived" by an untimely or ineffective assertion of the right of re-entry. Id. The right of re-entry can be asserted not only by physical re-entry but also by its "equivalent," which we have recognized to include the assertion of the right in court. Id. at 649, 66 S.E.2d at 497-98; see also Pence, 127 Va. at 455, 103 S.E. at 696 (observing that the grantor must take "appropriate action to have himself reinvested").

In this case, we need not address whether the possibility of reverter in Dorothy's deed of gift created only a contingent right of re-entry. Edward's pleadings in the circuit court specifically asserted a right of re-entry. See J.A. at 13-14. And the administrator does not challenge the efficacy or timing of this assertion. Cf. Sanford 192 Va. at 652, 66 S.E.2d at 499

10

III.

We reverse the circuit court's holding that the possibility-of-reverter provision in the

1989 deed of gift was void.  The case is remanded for entry of a final order consistent with this

opinion.  The final order shall be filed in the land records and may include, in the court's

discretion, an additional award of fiduciary compensation.

<u>Reversed and remanded.</u>

---

(rejecting as untimely an assertion of a right of re-entry created by a possibility of reverter in a deed conveying real property).