PRESENT:  All the Justices

CANOVA LAND AND INVESTMENT COMPANY

v.  Record No. 200476

CAROLYN G. LYNN, ET AL.

OPINION BY
JUSTICE WILLIAM C. MIMS
APRIL 15, 2021

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Angela L. Horan, Judge

In this case, the Court decides whether a deed restriction for the use of a particular church

was an unreasonable restraint on alienation.

## I.  BACKGROUND AND MATERIAL PROCEEDINGS BELOW

In 1875, Edna and Levi Lynn executed a deed granting one acre of land to the Woodbine

Baptist Church ("Woodbine") "in exchange for five dollars."   The deed states in relevant part:

> the said Trustees will hold said property for the use and benefit of the Baptist
> Church (commonly called the "New School" ) and that they will allow the proper
> authorities of said Church to use it for the worship of God in accordance with the
> customs and regulations of said Church and the laws of Virginia: The being those
> confirmed by the Circuit Court of Prince William at the May Term thereof for the
> said church known as the "Woodbine" Baptist Church, said property to revert to
> the grantors or their heirs if it ceases to be used for the purposes expressed in the
> deed.

Woodbine, which since its inception had been an unincorporated association, continued

to use the land until 2006, when its trustees gifted it to the Woodbine Family Worship Center and

Christian School ("Woodbine Worship Center"), a Virginia corporation.[1]  The land continued to

be used for worship by the corporation.

---

[1] Prior to 2002, the Virginia Constitution forbade the General Assembly from "grant[ing] a charter of incorporation to any church or religious denomination."  That provision was held to be unconstitutional in *Falwell v. Miller*, 203 F. Supp. 2d 624, 632 (W.D. Va. 2002).  The Virginia Constitution and the Code of Virginia were subsequently amended to allow churches to incorporate.

In 2007, Woodbine Worship Center received a loan of $1,373,000 from Virginia Commerce Bank. The loan was secured by a deed of trust, in which Woodbine Worship Center granted all of its "present and future right, title and interest" in a five-acre parcel of land, including the one acre conveyed by the 1875 deed. The bank's title search of the property extended only to the year 1900, so it did not disclose the 1875 deed.

Woodbine Worship Center defaulted on the loan in 2011. Canova Land and Investment Company ("Canova"), a wholly owned subsidiary of United Bank,[2] acquired title to the property at a foreclosure sale in September 2012. Canova has not taken possession of, attempted to sell, or used the property due to concerns about implicating the reverter clause in the deed. Woodbine Worship Center continues to use the land for worship.

Canova brought suit to quiet title to the property in the Circuit Court of Prince William County, claiming that the reverter clause in the 1875 deed should be voided as an unreasonable restraint on alienation. It asserted that because the deed by its terms allows use only by the "Woodbine Baptist Church," the restraint is irrationally limited in scope and should be voided as contrary to public policy. It also argued that upholding the deed restriction would hinder its efforts to develop the larger five-acre parcel, thus preventing it from being put to its most efficient use.

Appellees Carolyn Lynn and Cheryl Crawford, descendants of Edna and Levi Lynn, argued that the restraint in the 1875 deed only affects Canova's use, rather than its ability to alienate, and is therefore valid. They also argued that it "is the creator of its own alleged misfortune" because it failed to search the title prior to 1900. As to the reasonableness of the restriction, they note that Virginia precedent clearly recognizes a charitable exception to the rule

---

[2] Virginia Commerce Bank merged with United Bank in 2014.

2

against restraints on alienation, citing this Court's opinion in *County School Board of Scott County v. Dowell*, 190 Va. 676, 680 (1950). Appellees Unknown Heirs of Levi and Edna Lynn also countered Canova's claim that the restraint is unreasonably limited in scope. They argued that the restriction allows for use by the broader Baptist denomination and "not merely the Woodbine Congregation," and is therefore sufficiently general.

The parties went to trial in July 2019. The circuit court dismissed Canova's complaint with prejudice, but suspended the dismissal after Canova filed a post-trial motion. After reconsidering, the circuit court ultimately dismissed the complaint with prejudice in January 2020, finding that the reverter clause was a reasonable land use restriction imposed on a charitable gift. The court explained in its letter opinion that the deed granted a fee simple determinable subject to a possibility of reverter and not a fee simple absolute. Therefore, in acquiring the restricted property from Woodbine Worship Center, Canova "ha[d] acquired no more than its predecessor in title had." Relying upon *Dowell*, the circuit court also reasoned that a landowner has the right to grant a defeasible fee when the land is transferred for charitable purposes. On appeal, Canova claims that the 1875 deed imposes an unreasonable restraint on its ability to alienate the property. It assigns error to the lower court's finding that the restraint was reasonable in scope. We granted the petition for appeal.

## II. ANALYSIS

The interpretation of a deed is a mixed question of law and fact that this Court reviews de novo. *Caplan v. Bogard*, 264 Va. 219, 225 (2002). It is axiomatic that "a lawful owner, as a general rule, has the power to convey his real property to whomever he wishes under whatever conditions they agree to." *Hamm v. Hazelwood,* 292 Va. 153, 157 (2016). In interpreting the

3

Lynns' 1875 deed, we must give full effect to their intent unless such intent is inconsistent with the law. *Id.*

One limitation on a grantor's absolute right to transfer property is the rule against restraints on alienation. "A condition totally prohibiting the alienation of a vested fee simple estate or requiring a forfeiture upon alienation is void." *Edwards v. Bradley*, 227 Va. 224, 228 (1984). However, reasonable restraints are generally valid. *See Hamm*, 292 Va. at 159 (noting that lesser forms of restraint are not "per se repugnant," and will be upheld if "under all the circumstances of the case, the restraint is found to be reasonable") (quoting Restatement (Second) of Property: Donative Transfers § 4.2 (1983)). Additionally, we use a "liberal interpretation to uphold" deeds involving land granted for charitable purposes. *Shenandoah Valley Nat'l Bank v. Taylor*, 192 Va. 135, 148 (1951).

The 1875 deed granted Woodbine a fee simple determinable subject to the possibility of reverter, not a fee simple absolute. The deed language is comparable to the deed in *Dowell*, in which we found that a deed granting land to trustees of a local school district "so long as it is used for a public school" conveyed a valid defeasible fee. 190 Va. at 687, 689. We held that the limitation on the grant proved it "was not intended to be and was not in fact an absolute fee simple, but an estate whose duration should exist and continue until the happening of a specified event." *Id.* at 689.

As in *Dowell*, the Lynns never intended to grant a fee simple absolute to the Woodbine congregation. They used conditional language that is typical of a defeasible fee by specifying that the property will revert to the grantors "if it ceases to be used for the purposes expressed in the deed." As the circuit court correctly stated, "There is ample authority in Virginia that restrictions triggering reverters of fee simple determinable estates are generally valid." When a

4

grantor clearly intends to create a limited estate, we are less inclined to find the condition imposed on the grant to be unreasonable.[3]

Canova agrees that the deed creates a fee simple determinable, but it maintains that the restriction is nevertheless "all-encompassing" and constitutes an unreasonable restraint on alienation. It points to the Restatement (Second) of Property to buttress its claim that a forfeiture restraint on alienation must be "reasonable under all the circumstances of the case." Restatement (Second) of Property: Donative Transfers § 4.2 (1983). However, § 3.4 of the same Restatement distinguishes restraints on use, explaining that "a restraint on the use that may be made of transferred property by the transferee is not a restraint on alienation, as that term is used in this Restatement." While there is "no precise rule" for determining whether a restraint controls the use of property or its alienation, we look to the form of the restraint, the reasons for imposing the restraint, and the practical effect of the restraint when making our decision. *See id.*

Regarding form, the language of the deed granting land to Woodbine "to *use* it for the worship of God" clearly suggests that this is a restraint on use. (Emphasis added.) Additionally, the Lynns clearly stated their reason for imposing the restraint: "for the worship of God." That too suggests that the restraint focuses on the use of the property. Nonetheless, Canova claims that the "all-encompassing" nature of the reverter clause makes it a restraint on alienation in practical effect, if not in form.

---

[3] *See Hamm*, 292 Va. at 161 (upholding a deed granting property that would "automatically revert … in the event Reginald Wayne Clark … ever acquires any interest therein by grant, inheritance or otherwise" as a valid defeasible fee); *Talbot v. Norfolk*, 152 Va. 851, 854 (1929) (upholding a deed granting company land for a bridge "for its uses and purposes forever, provided, nevertheless, that if the said company shall abandon, or cease to keep in use, its bridge … that the said strip of land … shall ipso facto thereupon revert" as a determinable fee).

Canova claims that this case is comparable to *Dunlop v. Dunlop*, in which we held that a reverter clause requiring a son to forfeit three-fourths of his father's business if he attempted to sell any part of it was unreasonable because it was unlimited in time and scope. 144 Va. 297, 309 (1926). We disagree. The testator in that case granted a fee simple absolute, suggesting that he wanted his son to have "absolute control and complete ownership of [his business]." *Id.* at 305. By contrast, the Lynns' deed conveyed a defeasible fee to Woodbine.

This case is more aptly compared to *Hamm*, where we emphasized the flexibility with which we evaluate reasonableness, noting that our determination must involve a consideration of "all the circumstances of the case." 292 Va. at 159. In that case, we upheld a deed that required reversion if the beneficiary's son ever acquired interest in the deeded property as a reasonable alienation, given the limited duration and scope of the restraint. *Id.* at 159-60. We found it persuasive that the deed was limited in scope because it restricted only one person from occupying or possessing the property, and that it was similarly limited in time because the restriction could only last during the recipient's son's lifetime. *Id.* We further found that the condition did not impose a restraint on alienation, although "the provision had the practical effect of precluding [the sister] … from ever selling or devising the property to [her son]." *Id.* at 163. Like in *Hamm*, although the practical effect of the Lynns' deed limits Canova's ability to sell the property, the form and context of the grant suggest that it is a restraint on use.

In arguing that the 1875 deed restraint is unreasonable, Canova has adopted an overly restrictive interpretation that would create significant unintended consequences for church landowners. Under Canova's interpretation, the deed permits use only by Woodbine as the congregation existed in 1875. We disagree. At oral argument, Canova conceded that, under its interpretation, the deed may have been violated when Woodbine incorporated in 2006 to become

6

the Woodbine Worship Center, a transition adopted by countless congregations in Virginia once incorporation was permitted. Indeed, following Canova's interpretation to its logical conclusion, if Woodbine changed its denominational affiliation – such as joining or leaving the Southern Baptist Convention, for example – the subsequent use by the newly-affiliated entity could constitute a violation of the restraint in the deed. To adopt such a narrow and rigid interpretation would ignore the practical realities of individual congregations and denominations over decades and even centuries. The more reasonable interpretation of the deed is that the land must be used "for the worship of God" by a congregation that generally follows the tenets of Baptist churches.[4]

We acknowledge that this deed is more restrictive than the reverter clause in *Hamm*. Yet, the other circumstances of this case weigh in favor of finding that it is reasonable. First, as mentioned above, the Lynns' original grant was clearly intended as a defeasible fee, a grant that "was not intended to be and was not in fact an absolute fee simple." *See Dowell*, 190 Va. at 689. Second, as discussed above, the form of the restraint and the circumstances in which it was granted strongly suggest that this is a restraint on use, rather than a restraint on alienation, and is therefore more likely to be reasonable. Third, and of key import, the reasonableness of the restraint must be considered in light of Virginia's longstanding policy preference for charitable gifts.

Both the Restatement and our precedents recognize a preference to uphold charitable gifts. The Restatement (Third) of Property provides that if a land is held for charitable purposes, even "very severe restraints on alienation are normally justified to assure that the land continues

---

[4] We decline to opine regarding what those tenets may be. We note that Baptist churches are generally congregationalist in their polity, whereby local congregations maintain substantial independence and autonomy.

to be used for the intended purposes." Restatement (Third) of Property (Servitudes) § 3.4, cmt. c (2000).[5] This Court has consistently affirmed the notion that charitable gifts are "favored creatures of the law." *Shenandoah Valley Nat'l Bank*, 192 Va. at 141. In *Shenandoah*, we "applied a liberal interpretation to uphold" a trust establishing periodic payments to students in a local elementary school, despite the trust having an indefinite number of beneficiaries. *Id.* at 141, 148. The *Shenandoah* Court defined "the advancement of religion" as a charitable purpose falling within the policy exemption. *Id.* at 140.[6]

Given that the Lynns' original grant to Woodbine constituted a charitable gift,[7] we hold that our longstanding policy preference for such gifts applies in this case. Although we have not previously addressed whether the preference for charitable gifts applies in the context of restraints on alienation, our holding in *Dowell* suggests that it does. In *Dowell*, we upheld a deed granting land to trustees of a local school district "so long as it is used for a public school." 190 Va. 676. We recognized that the reverter clause may have been insufficient because it failed to adequately determine in whom the possibility of reverter would vest, but that by looking at the intent of the grantor the conditions could be upheld because the grant "clearly fixed its quality" as a determinable fee gifted to the school. *Id.* at 690 (citing *First Universalist Soc'y v. Boland*, 29 N.E. 524, 525 (Mass. 1892)).

---

[5] Restraints on charitable trusts "will be upheld though the alienation of the property involved is restrained indefinitely." 1 Frederick D.G. Ribble, Minor on Real Property § 555, at 729 (2d ed. 1928).

[6] Similarly, in *Collins v. Lyon* we stated that "all doubts will be resolved in [] favor" of trusts created for charitable purposes when we held that such trusts do not fall within the rule against perpetuities. 181 Va. 230, 252 (1943).

[7] Canova claims that the 1875 deed does not constitute a charitable gift because the Lynns granted Woodbine the land in consideration of five dollars. However, we have held that grants in exchange for nominal consideration nevertheless constitute charitable gifts. *Brown v. Bonner*, 35 Va. 1, 2 (1837) (upholding a deed in exchange for "the nominal consideration of one dollar" as a valid gift).

The Lynns clearly expressed their charitable intent to grant their land to Woodbine to be used for church purposes, a purpose which we have previously held constitutes a charitable gift. *See Shenandoah*, 192 Va. at 140. As such, upholding the deed's use restriction is most consistent with our preference for such gifts, as well as our overarching policy preference to allow the land to continue to be used according to the Lynns' stated desire.

We have recognized that "public policy is at the heart" of challenges involving restraints on alienation. *Lipps v. First American*, 223 Va. 131, 137 (1982). In *Lipps*, we noted that determining whether a restraint is reasonable requires "considering whether [the restraint] is such only as to afford a fair protection to the interest of the party in favor of whom it is given, and not so large as to interfere with the interest of the public." *Id.* at 136 (quoting *Merriman v. Cover*, 104 Va. 428 (1905)).

As in *Lipps*, we must weigh the policy preference for charitable gifts against the countervailing societal interest in allowing Canova to alienate their property. Canova claims that upholding the restraint would significantly limit its ability to develop the land for arguably more efficient purposes, and would, to quote Minor, "put the lands of the living in the cold grip of the hands of the dead." 1 Frederick D.G. Ribble, Minor on Real Property § 553, at 720 (2d ed. 1928). We sympathize with these concerns, but we cannot agree that Canova's legitimate interest in robustly developing the larger parcel of land it has acquired outweighs the equally legitimate interest in protecting and promoting charitable giving. To hold otherwise, as appellees have noted, would put into jeopardy innumerable charitable gifts with restraints like those included in the Lynns' deed. *See Dowell*, 190 Va. at 680. In light of the significant chilling effect that such a holding could have on charitable giving, we cannot agree that Canova's interest in developing all of its acquired land should take priority.

9

Because the Lynns' deed granted Woodbine a fee simple subject to the possibility of reverter, the reverter by its terms is a restraint on use, and the reverter is not unreasonable in light of the charitable context in which it was given, we affirm the circuit court's decision to uphold the 1875 deed as valid.[8]

## III.  CONCLUSION

For these reasons, we affirm the Circuit Court of Prince William County's dismissal of Canova's complaint.

*Affirmed.*

---

[8] Canova assigned error to the trial court's finding that a conveyance of property by a fee simple determinable deed cannot constitute an unreasonable restraint on alienation as matter of law.  We do not reach this broader issue because we find, considering these specific facts, that this particular grant by fee simple determinable was reasonable.